**STATE of Missouri, Respondent,**

v.

**Allen C. HAWKINS, Appellant.**

**No. 29807.**

Missouri Court of Appeals, Western District.

April 30, 1979.

Charles Gallipeau, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Steve Scott Clark, Asst. Atty. Gen., Jefferson City, for respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, C. J., and WELBORN, Special Judge.

WELBORN, Special Judge.

Appeal from judgment of conviction and sentence of life imprisonment upon jury verdict finding Allen C. Hawkins guilty of murder in the second degree.

The issues on this appeal do not require an extensive recital of the facts. The victim of the homicide, Alvin Norton, dealt with Lawrence Goshon in purchasing narcotics. Goshon in turn dealt with appellant Hawkins. In October, 1975, money and narcotics were stolen from Goshon's apartment in a robbery. About $1,600 which Goshon owed Hawkins was taken. Hawkins asked Goshon to get Norton to come to Goshon's apartment. Goshon did so and when Norton got there he was "jumped" by five persons, including Hawkins. Heroin was injected into Norton and a wire wrapped around his neck. Hawkins pulled on the wire and Norton choked. Norton was placed in a closet. Later his body was removed and eventually discovered in a stairway of a nearby building. The medical examiner found that Norton's death was caused by asphyxiation by ligature.

Goshon testified for the state at Hawkins's trial. Hawkins, the sole witness for the defense, denied that he had participated in Norton's death.

In this court, the issues relate to the giving of a "hammer" instruction and to an incident involving a juror.

Appellant's trial began Monday, June 27, 1977. The jury was impaneled that day. The reception of testimony began the following day and continued through Thursday, June 30, 1977.

At 4:28 P.M., June 30, the jury retired to deliberate. Shortly before 8:25 P.M., the deputy in charge of the jury gave the court a written message from the foreman requesting the testimony of one of the state's witnesses. The court advised counsel that he intended to advise the jury that he could not provide them with any testimony. He also stated that he intended to inquire as to how the jury stood numerically. At 8:25, the jury returned to the courtroom and the court advised them regarding the testimony requested. He then asked the foreman how the last vote of the jury stood, without reference to guilt or innocence. The foreman replied: "Seven to five."

The court then asked the foreman whether he felt that it would be worthwhile to continue the deliberations. The foreman replied, "Well, frankly I don't." The court then inquired whether the foreman thought it would do any good to start fresh in the morning. The reply was negative.

A discussion out of the presence of the jury ensued and the state requested that the "hammer" instruction be given. Defense counsel objected strenuously but the court said that he felt compelled to give it.

At 8:45 P.M., the jury returned into open court and the instruction in the form of MAI–CR 1.10 was read to them. The jury retired. At 9:29 the court received an inquiry from the jury regarding the "difference between a 99-year sentence and life." The court declined to answer the inquiry. At 9:38 P.M. the jury returned into open court and announced that they had reached a verdict. The verdict finding appellant guilty of murder in the second degree and fixing his punishment at life imprisonment was read.

In this court, appellant contends that giving the instruction was unduly coercive and improper under the circumstances of this case and coerced a compromise verdict. He argues that the fact that at least five jurors changed their minds within 45 minutes of the giving of the instruction shows that without doubt the verdict was the result of the coercion generated by the "hammer" instruction.

Appellant acknowledges the discretion entrusted to the trial court in determining whether such instruction should be given. *State v. Jones,* 545 S.W.2d 659, 666[5, 6] (Mo.App.1976); *State v. Jenkins,* 516 S.W.2d 522, 528[22, 23] (Mo.App.1974).

Appellant relies upon Federal cases in support of his claim for error in this regard. However, except for general rules to be found in them, they are not helpful. As *United States v. Taylor,* 513 F.2d 70 (5th Cir. 1975), points out, the question of the propriety of such an instruction must be answered by examination of the facts of each case. The only case cited for its factual connection with this case is *United States v. Moore,* 429 F.2d 1305 (9th Cir. 1970). In that case, after the so-called "Allen" charge had been given, the jury did rehear the testimony of the witnesses and then retired to reach a final verdict. Appellant contrasts that situation with the present case. However, *United States v. Moore* cannot be taken to require the procedure there followed in every case where an instruction such as this is given.

The answer to appellant's complaint may be found in Missouri cases. The fact that the jury returns a verdict shortly after receiving the "hammer" instruction does not establish coercion. *State v. Smith,* 556 S.W.2d 484, 485[2] (Mo.App.1977) (1½ day trial, 3½ hours deliberation, 10–2, "hammer," verdict 50 minutes later); *State v. Smith,* 431 S.W.2d 74, 86[31, 32] (Mo.1968) (length of trial not shown; one hour 40 minutes deliberation, "about 8 to 4"; "hammer," verdict one hour 35 minutes later). The fact that the judge is told by a juror that he believes further deliberation would be useless does not preclude use of the instruction. *State v. Letourneau,* 515 S.W.2d 838, 844[8, 9] (Mo.App.1974). The court here was not advised how the 7 to 5 vote stood, so the rule in *State v. Sanders,* 552 S.W.2d 39 (Mo.App.1977), does not apply. See *State v. Smith,* 556 S.W.2d 484, 485[2] (Mo.App.1977).

There has been no demonstration that the giving of the "hammer" instruction was coercive in fact. The circumstances of this case do not demonstrate an abuse of discretion on the part of the trial court. This assignment of error is without merit.

Before the trial resumed on the third day, the bailiffs in charge of the jury reported to the court that at around 3:00 A.M. two persons reported to them that someone had entered the unlocked motel room in which the two jurors were sleeping and had stolen $33 from the trousers of one juror. The bailiffs reported that from conversation they had heard that morning, other jurors were aware of the occurrence.

Counsel for appellant moved for a mistrial, noting that on voir dire inquiry had been directed at prospective jurors concerning their having been victims of crime and that responses to such inquiry were considered in the selection of jurors. He stated that the occurrence of what he called a "robbery" of a juror and the knowledge of that fact among the other jurors would prevent their giving appellant a fair trial.

The court stated that the theft from the juror and the case on trial were in no way so closely related that there would be an analogy between the two drawn by the juror involved or other jurors. The court noted that the juror might as well conclude that since the state was responsible for his being in the motel as a juror, the juror's anger, if any, could as well be directed at the state. The court concluded:

"THE COURT: I would, if I were convinced that there was something about this incident that's taken place that would in any way affect the jurors' ability to evaluate the evidence in this case, and make a determination of this defendant's guilt or innocence.

"MR. GALLIPEAU (attorney for defendant): We have no way of knowing that, though, judge.

"THE COURT: I recognize that. We don't know specifically. But I don't think there's anything about the incident that would indicate to me that the defendant would be prejudiced. The motion will be denied."

In his motion for new trial on this point, appellant complained that there was "no opportunity allowed to conduct further voir dire" of the juror involved. However, no such request was voiced at the trial and in this court the complaint is that the trial court should have conducted such an examination sua sponte and that in the absence of such inquiry, his motion for mistrial should have been sustained. The absence of a request precludes any finding of error on the part of the trial court in failing to conduct a hearing on this matter. *State v. Mullen,* 528 S.W.2d 517, 521[2–5] (Mo.App. 1975). Therefore, the only question presented is that of error in the failure to declare a mistrial.

Given the drastic nature of the remedy of a mistrial and the discretion accorded the trial court in passing upon the qualification and competency of jurors (*State v. Allen,* 485 S.W.2d 28 (Mo.1972)), there has been no demonstrated abuse of discretion in this case in the refusal of a mistrial. The court did not dismiss the question summarily but gave it careful consideration. He exercised his judgment and the ruling was not so unreasonable as to constitute an abuse of discretion. Appellant's "* * * claim of bias and prejudice [on the part of the juror] remains a bare allegation which he did nothing to substantiate." *State v. Mullen,* supra, 528 S.W.2d at 521.

Judgment affirmed.

All concur.