STATE of Missouri,
Plaintiff-Respondent,

v.

Earl WILLIAMS, Defendant-Appellant.

No. 12735.

Missouri Court of Appeals,
Southern District,
Division One.

June 20, 1983.

---

2. The state's brief states, "the witness was endorsed over a month before the trial."

John D. Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Charles E. Buchanan, Asst. Public Defender, Joplin, for defendant-appellant.

GREENE, Chief Judge.

Defendant, Earl Williams, was convicted of second degree arson § 569.050, RSMo 1978, and sentenced to five years' imprisonment.

The state's theory was that Williams, facing a loss of income and an increase in his monthly home mortgage payment, burned the home of Williams and his wife to collect the fire insurance on the property. There was considerable evidence that the fire was "set" and that gasoline had been used by the arsonist to start and spread the fire. Defendant's theory was that the fire was caused by a natural gas explosion resulting from a faulty furnace. The jury rejected the defendant's contention of accidental burning. There was sufficient circumstantial evidence to support the conviction.

Defendant's first contention on appeal is that the trial court erred in refusing to let witness John Junior Williams give his opinion as to the point of origin of the fire. The witness, uncle of the defendant, had been a member of the Joplin, Missouri fire department for 20 years, and also owned a construction company. While he had considerable experience fighting house fires, he had no training in arson investigation or detection. He had studied what firemen called "the red books." When asked if these books contained information on arson investigation, he replied, "Well, not a great deal, but it tells you what to kind of look for and stuff on this sort. It don't exactly pinpoint arson...."

The trial court permitted the witness to give his opinion that the house was poorly constructed and that the electrical wiring was "shoddy", based on his experience as a home builder, but refused to let him give an opinion as to where the fire originated, without further qualification as an arson detection specialist.

Generally speaking, the admission or rejection of expert testimony is discretionary with the trial judge [State v. Purnell, 621 S.W.2d 277, 281 (Mo.1981)], and absent a clear-cut abuse of that discretion, the trial judge's ruling on the matter is rarely disturbed on appeal. We find no such abuse of discretion under the facts related here. Experience in fighting fires does not, of and by itself, qualify one as an expert in arson detection. The point relied on is denied.

Defendant's final claim on appeal is that the trial court erred by giving instruc-

·tion MAI–CR2d 1.10[1] (the "hammer" instruction) under the facts of this case. The events leading up to the giving of the instruction are as follows. After hearing all of the evidence and being instructed by the trial court, the jury retired to deliberate at 2:42 p.m. At 5:10 p.m., the jury sent the trial judge a note that read, "Hung jury. Terry Hall." The jury was returned into court and the following statements were made:

"The Court: Mr. Hall, have you been elected the foreman of the jury?

Mr. Hall: Yes, Sir.

The Court: I don't want you to tell me how they stand. I don't want to know how many stand for acquittal and how many stand for a verdict of guilty, but can you tell me numerically how it is; six-six or ___?

Mr. Hall: Numerically, eleven-one.

The Court: Eleven-one. Do you feel that further deliberations would in any way help resolve the conflict?

Mr. Hall: Really, I don't think so. The person that voted by themselves was pretty—seemed to be pretty firm in their conviction as to the way they voted.

. . . .

The Court: I am going to at this time read to you another instruction which will be handed to you to take to the jury room. I'll permit you then to deliberate a while longer. . . ."

The trial judge then read MAI–CR2d 1.10 to the jury. The jury retired to deliberate at 5:22 p.m. and returned a guilty verdict twenty-three minutes later.

Defendant contends that under the circumstances of this case, the guilty verdict was coerced. The point relied on is controlled by State v. Hawkins, 581 S.W.2d 102

(Mo.App.1979), which held that the fact a juror told the trial judge that he believed further deliberation was useless does not preclude use of the instruction in question and that the fact that the jury returns a verdict shortly after the instruction is given does not establish coercion. See also State v. Broadux, 618 S.W.2d 649 (Mo. banc 1981) which held the trial court did not abuse its discretion by giving the "hammer" instruction after it had received voluntary unsolicited information that the jury stood eleven to one.

The circumstances of this case do not demonstrate an abuse of discretion by the trial court in giving the instruction in question. The assignment of error has no merit.

Judgment affirmed.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.

---

1. Instruction MAI–CR2d 1.10 reads:
"It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."