STATE of Missouri, Plaintiff-Respondent,

v.

Donald F. HYZER, Defendant-Appellant.

No. 14472.

Missouri Court of Appeals, Southern District, Division Two.

April 6, 1987.

Motion for Rehearing and/or Transfer Denied April 24, 1987.

Application to Transfer Denied June 16, 1987.

Holly G. Simons, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Donald F. Hyzer guilty of the sale of marihuana in violation of § 195.020, RSMo Supp.1984. His punishment has been assessed at imprisonment for a term of 5 years. Defendant appeals. We reverse and remand.

On August 11, 1984, defendant was working as a bartender in a Joplin bar. After the defendant had finished his shift, one Mike Kime, a volunteer "undercover" agent for the Joplin Police Department, arranged to purchase marihuana from the defendant. The defendant offered to sell Kime one-fourth ounce of marihuana for $30. Kime told the defendant he would have to obtain funds. Kime then left the bar and contacted Joplin detective James Dacy.

Dacy met Kime at a parking lot, gave him $30, and "checked to make sure the wire[1] was working." Dacy also searched Kime to determine that Kime had no drugs on his person. Dacy was parked some distance from the place where the purchase was made, and could hear, but could not see, the transaction taking place. Kime and the defendant went outside the bar to the defendant's automobile. Defendant then sold Kime the marihuana, packaged in a "sandwich baggie, a cellophane wrapper type." Kime marked the container with his initials. He identified the cellophane bag—introduced as State's Exhibit 2—at the trial. There was evidence that the bag sold to Kime by the defendant contained 5½ grams of plant material. A chemist with considerable experience identified the material in the cellophane bag as marihuana.

In this court, the defendant has briefed four assignments of error. One of the points raised is that the trial court erred in denying defendant's motion to quash the jury panel because the jury-selection procedures followed were not in compliance with the controlling statutes, §§ 495.040–495.100, RSMo 1978. Identical issues were raised in *State v. Stephens,* 699 S.W.2d 106 (Mo.App.1985), and ruled against the defendant in that case, which

---

1. The "wire" was a transmitter Kime was wearing.

was also tried in Jasper County. The point has no more merit in this case than it had in *Stephens.*

■ A further point advanced is that the trial court erred in giving and reading MAI-Cr.2d 2.20, "because that instruction violated [defendant's] rights to due process in that the instruction defines proof beyond a reasonable doubt as proof that leaves jurors 'firmly convinced,' thereby diminishing the meaning of proof beyond a reasonable doubt."

This court has also recently addressed the contention that the definition of "reasonable doubt" contained in MAI-Cr.2d 2.20 is constitutionally infirm. *State v. Pendergrass,* 726 S.W.2d 831 (Mo.App. 1987). In general, the court reached the conclusion that there is neither any standard definition of the phrase "reasonable doubt" which must be used nor any particular ritual which must be followed in explaining the order of doubt which is "reasonable." See: *Friedman v. United States,* 381 F.2d 155, 160 (8th Cir.1967); 2 C. Wright, Federal Practice and Procedure, Criminal 2d § 500 (1982). We reaffirm what was said in *Pendergrass.*

A further point made by the defendant is that the trial court erred in giving MAI-Cr.2d 1.10 "after an hour and fifteen minutes of deliberation in that the jury foreman had expressed the firm conviction that no verdict could be reached and 1.10 unduly pressured the jurors who were in favor of acquittal to go along with the majority because through [the instruction] the judge indicated his desire that a verdict be reached."

This cause was submitted to the jury at 2:33 p.m. At 3:40, the jury sent a note to the court reading: " 'We have a hung jury. What do we do?' " The court asked for suggestions by counsel. The defendant's attorney suggested the note be ignored. Counsel for the State suggested that ignoring the note would probably prompt the jury to "sit and wait." Both counsel suggested the court might give the jury the "hammer" instruction—MAI-Cr.2d 1.10.

The jury was called before the court. Directing its questions to the foreman, the court inquired:

"THE COURT: So, now I'll ask you, has the jury arrived at a verdict?

MR. SCHULTE: No, sir.

THE COURT: How does the jury stand numerically?

MR. SCHULTE: Ten and two.

THE COURT: Mr. Schulte, do you feel that if the jury was allowed more time to deliberate that they could arrive at a verdict?

\*    \*    \*    \*    \*    \*

MR. SCHULTE: No, sir.

THE COURT: Do other members of the jury feel that if the jury was allowed more time to deliberate they could arrive at a verdict? You can shake your heads or give me some indication. I don't see much indication of any type. All right. I'm going to read you another instruction. Instruction Number 11."

The court thereupon read MAI-Cr.2d 1.10 to the jury and each member of the jury was given a copy of the instruction. As soon as their deliberation had been resumed, the jury asked to listen to the tape made by Dacy—from Kime's transmitter— while the marihuana was being sold, or to listen to a transcript of the tape. This request was denied by the trial court. At 4:46 the jury returned with its verdict.

■ Whether MAI-Cr.2d 1.10 should be read to the jury is a matter within the sound discretion of the trial court. *State v. Anderson,* 698 S.W.2d 849, 853[8] (Mo. banc 1985). As far as the request to hear the tape is concerned, there is no affirmative requirement that the jury reconsider all, or part, of the evidence after the "hammer" instruction is given. *State v. Hawkins,* 581 S.W.2d 102, 104[1] (Mo.App.1979). The fact that a verdict is returned shortly after the "hammer" instruction is given does not establish coercion, *State v. Hawkins,* 581 S.W.2d at 104, and being told by a juror that further deliberation would not be helpful does not preclude use of that instruction. *State v. Anderson,* 698 S.W.2d at 853; *State v. Hawkins,* 581 S.W.2d at 104. The facts and circumstanc-

es of this case demonstrate no abuse of discretion in giving MAI–Cr.2d 1.10. The assignment of error is without merit.

█ A final assignment of error is that the trial court erred in refusing to permit defense counsel to ask each venireman if he "would be more likely to believe the testimony of a police officer rather than testimony of any other witness." The State moved, in limine, to prohibit defense counsel from asking that question on voir dire. Relying on *State v. Williams,* 617 S.W.2d 98, 99[1][2] (Mo.App.1981), the trial court sustained the motion. *Williams,* decided by the Eastern District, does hold that such a question is improper. However, the holding was dictum as the question was allowed and the issue before the court was whether the trial court erroneously denied the defendant's challenge for cause.

The analysis of this problem in *United States v. Spaar,* 748 F.2d 1249, 1253–54 (8th Cir.1984) and *Brown v. United States,* 338 F.2d 543, 545 (D.C.Cir.1964), is more accurate. They hold that such an inquiry "is not only appropriate but should be" allowed. In this case, where the State's case literally depended upon a volunteer undercover officer, absolute denial of the right to discover partiality on the part of a venireman may well have denied the defendant a fair and impartial trial. In *State v. Williams,* 643 S.W.2d 832 (Mo.App.1982), the Eastern District reversed a conviction because a challenge for cause was denied after a venireman indicated partiality toward the testimony of a peace officer. In our view, the presence of such bias should be fully revealed to defense counsel whether or not it entitles the defendant to a challenge for cause as this knowledge could be necessary in making peremptory challenges. We consider the point well taken. For error in restricting the voir dire, the cause is reversed and remanded.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.