**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Edward JOHNSON, Defendant-Appellant.**

**No. WD 30698.**

Missouri Court of Appeals,
Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 30, 1980.

Application to Transfer Denied
Feb. 9, 1981.

Michael E. Reardon of Duncan, Russell & Reardon, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Kathleen Mills, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PER CURIAM.

This is a direct appeal from a jury conviction for first degree robbery. The court affixed punishment at eight years in the Department of Corrections. The judgment is reversed and remanded.

Appellant presents five points of error, but for purposes of disposition herein, only one of said points is taken up. Appellant alleges that the trial court erred in giving the "hammer instruction" after the jury had announced it was deadlocked and announced the vote of the jurors.

Appellant does not challenge the sufficiency of the evidence, so a brief summary thereof suffices for disposition of this appeal.

On March 13, 1978, at about 4:00 p. m., appellant went to the offices of the Mews Apartments and made inquiry about an apartment. Appellant was advised that no apartment was available. At about 9:45 p. m., the security guard for the Mews Apartments, after a routine patrol of the area, returned to the clubhouse. This security guard found appellant inside the clubhouse. On first encounter, appellant told the security guard that he was with the maintenance crew for the apartment complex and had been working on a light in the building.

The security guard started to make a phone call to check on appellant's story. At this point, appellant seized the guard's gun, pointed the gun at him and told him that if he moved, he would kill him.

Appellant ordered the security guard to lie on the floor. Appellant handcuffed the guard and took the guard's wallet, keys, pager and $18.00 in cash. The guard was moved to a restroom and instructed not to leave or he would be shot.

The guard later notified the police and an investigation revealed a forced entry into the rear of the clubhouse. The guard testified that appellant was in his presence some 20–25 minutes and that the area was well lighted. He said he was able to see appellant's face for about ten minutes. He later identified appellant in a police lineup.

The defense, which was alibi, was furnished by appellant's family and friends who testified that appellant was home the entire evening of the robbery, except for a brief trip to the grocery store around 6:15 p. m.

The jury returned a verdict of guilty, and this appeal followed the overruling of a timely filed motion for new trial.

Following the submission of the case, the jury deliberated for approximately three hours. At the end of this period, the jury sent the following message to the trial judge, "The jury is deadlocked with ten people firmly believing the defendant Edward Johnson guilty as charged, while two are steadfastly convinced that the State has not proved beyond a reasonable doubt that Edward Johnson was the man at the scene of the crime. What now?"

Upon receiving this message, the trial court, over the objection of appellant, gave the "hammer instruction". Appellant's objection was premised upon the announcement of the 10–2 vote of the jurors. The court instructed the jury, in accordance with the form authorized by MAI–CR 1.10, and the "hammer instruction" given reads as follows:

"INSTRUCTION NO. 10

It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts, however, no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."

In addition to the foregoing instructions, the court advised appellant it would orally admonish the jury in regard to reaching a verdict. The court stated to appellant,

"THE COURT: All right. We are going to give them Instruction No. 10. My question is do you want me to add anything orally, to possibly avoid any intention they might have that they've got to stay here until they reach a verdict, such as telling them after the further deliberations they still feel they can't get together, let us know and I will discharge them."

Relative to the court's offer of additional oral admonishment, counsel for the parties responded thusly:

"MR. REARDON: I object to the instruction and any additional instructions the State might wish to give them.

MRS. FORTNEY: I don't want any additional addendum."

Appellant argues that the giving of the hammer instruction following the disclosure of the jurors' vote amounted to coercion of the jury, resulting in reversible error. Appellant cites as controlling *State v. Sanders*, 552 S.W.2d 39 (Mo.App.1977).

Respondent, on the other hand, argues that since the jury deliberated for 45 minutes, following the submission of MAI–CR 1.10 (the "hammer instruction"), the giving of said instruction did not evince coercion of the jury. Respondent argues that each case should be addressed upon its own facts and circumstances and when the jury has taken sufficient time to deliberate, such is proof that coercion has not occurred.

■ This court is aware that it has long been the rule in our state that further instruction to the jury following notice by the jury that it is deadlocked is not error and that the jury must be given sufficient time to deliberate. What "constitutes sufficient time varies with the complexity of each case", see *State v. Cochrell*, 492 S.W.2d 22, 27 (Mo.App.1973), citing *State v. Corlew*, 463 S.W.2d 836 (Mo.1971) and *State v. Smith*, 431 S.W.2d 74 (Mo.1968).

Our courts have never directly faced the issue of whether the giving of the "hammer instruction" (after the trial judge has been made aware of the jury vote and how their vote stands on guilty or not guilty, or for conviction or acquittal) is prejudicial per se.

In a recent decision, our State Supreme Court referred to the issue and by so doing, convinces this court that the giving of such instruction *or* the order of the court to the jury to return for further deliberation after disclosure of the vote and how the jurors stand on guilty or not guilty, or on conviction or acquittal, would be prejudicial error. The State Supreme Court in *State v. Holt*, 592 S.W.2d 759, 772 (Mo.banc 1980) declared,

"Thanks to the foreman's blunder, the trial judge found himself in a difficult situation. Knowing that the jury was nine to three against the appellant, for the court to return them for further deliberation would be a clear signal that the judge, who knew how they stood, thought they were on the right track. It would inevitably make appellant's three jurors doubtful and apprehensive about continuing to hold out. The appellant could, with justification, contend that sending

the jury back at 12:45 or 1:00 o'clock in the morning, when the judge knew they were nine to three for conviction, was a tactic to give the state more leverage to convict the appellant. It would be different if the judge knew only that the jury stood nine to three, because then his attempt to bring about a verdict by requiring further deliberation would be made without the court's knowing which side would likely be the beneficiary of his action. Under the circumstances before him, the only way the court could avoid showing favoritism to the state was to declare a mistrial. His action was not over hasty or rash."

If, as in *Holt, supra,* the mere requirement that the jury continue deliberations is suspect, it stands to reason that the giving of MAI–CR 1.10, under like conditions, is even more suspect.

*It is the opinion of this court that both the requirement of continued or further deliberations, or the giving of MAI–CR 1.10, (the so-called "hammer instruction") to a jury, subsequent to disclosure to the trial judge that the jury is deadlocked and the vote on how the jurors stand on the issue of guilt or innocence, or conviction or acquittal, constitutes prejudicial error.*

*If, on the other hand, the jury announces or the trial judge otherwise learns that the jury is deadlocked and the vote is made known but the vote does not disclose how the jurors stand on the issue of guilt or innocence or conviction or acquittal, then requirement for further deliberation or the giving of MAI–CR 1.10, the so-called "hammer instruction", shall not constitute prejudicial error and the ordering of further deliberation or the submission of MAI–CR 1.10, the so-called "hammer instruction" shall lie within the sound discretion of the trial judge and the review of such cases shall be upon the particular facts and circumstances of each case for the purpose of determining thereunder whether there was an abuse of such discretion.*

This court is bound to follow the latest decision of the State Supreme Court

and as referred to above, this court concludes that *Holt, supra,* controls the instant case.

For the reasons set forth herein, the judgment is reversed and the cause is remanded for retrial upon the merits.