**STATE of Missouri, Respondent,**

v.

**Willie BROADUX, Appellant.**

No. 62739.

Supreme Court of Missouri,
En Banc.

July 14, 1981.

Mary Bennett, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul R. Otto, Jay Haden, Asst. Attys. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Willie Broadux was convicted by a jury of robbery in the first degree and stealing a motor vehicle. The court fixed his punishment as a second offender at imprisonment for thirty years for robbery and ten years for stealing. Sentence and judgment were rendered accordingly; the terms of imprisonment were imposed to run consecutively. The court of appeals would have affirmed the judgment but transferred the case because of conflict between its opinion and other decisions on the propriety of giving MAI–CR 1.10[1] after the court had been apprised by the jury that it was deadlocked eleven to one favoring conviction of robbery rather than the lesser included offense of stealing from the person. The principal question is whether the trial court abused its discretion when it gave the instruction. A second question is whether the court made proper application of the Second Offender Act. Affirmed.[2]

---

1. The instruction reads:
   "It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."

2. The Court has drawn freely from the opinion of Reinhard, J., in reaching the same result on both issues in this case.

Vickie Ann Stewart was accosted September 20, 1978, by a man who stuck a broken bottle into her side. The assailant, later identified as defendant, told her to give him all her money. After she did so, he forced her to accompany him to a construction area and to get into a truck. As he began to drive around the construction area, the owner of the truck and other construction workers began pursuit. Defendant stopped the truck and forced his victim to take off her clothes from the waist down. After she complied one of the construction workers rammed a backhoe into the truck and both the defendant and the victim jumped out. Defendant was apprehended and turned over to the police.

Defendant was tried on charges of first degree robbery, Count I; stealing a motor vehicle, Count II; and assault with intent to ravish with malice aforethought, Count III.

The jury began its deliberations at 11:00 a.m. During its deliberations, the jury sent the judge a note which stated: "Jury hung on robbery first degree. One juror feels robbery first degree to harsh. Remaining jurors feel stealing from a person too lenient." The judge instructed the jury: "The jury will be guided by the evidence in the case and the instructions of the court."

At 3:25 p. m. the judge informed counsel that he was going to give MAI–CR 1.10. The jury was called into the courtroom and the court asked if it had reached a verdict on any of the counts. The jury indicated that it had reached verdicts on Counts II and III. The court then asked:

Now, Mr. Foreman, I'm going to ask you a question and I want you to pay real close attention to the Court. * * * Without telling this court how you stand on whatever Count that you have not reached a verdict on—without telling the Court how you stand on that Count with reference to guilt or non-guilt—the court does not want to know that, could you tell the Court how you stand numerically as to that Count, numerically. Eight to four, nine and three, ten and two, whatever, eleven and one.

The foreman responded, "Yes, Sir. Eleven to one." The judge then received the verdicts of guilty on Count II (robbery) and not guilty on Count III (assault), and over objections of counsel gave MAI–CR 1.10. The jury retired for further deliberations and returned at 4:40 p. m. with a verdict on Count I finding defendant guilty of robbery in the first degree.

■ Appellant contends the court erred in giving MAI–CR 1.10. He asserts that such action by a judge who not only is aware of the dead-locked jury's numerical split, but also which verdict is favored by the majority, constitutes reversible error because it will have a coercive impact on the minority jurors. He argues that because the earlier note indicated that the jury was split eleven to. one in favor of robbery in the first degree, the minority juror could assume that the judge was fully apprised and was asking for a unanimous vote; thus the reading of the instruction placed pressure on the one juror to conform to the majority vote because, to that juror, the instruction could mean only one thing— that the judge thought that he should reconsider his vote.

MAI–CR 1.10 was approved by the Supreme Court in 1973.[3] The notes accompanying MAI–CR 1.10 do not limit its use; they provide that it may be given when "appropriate". The decision whether to give MAI–CR 1.10 thus rests in the discretion of the trial court. *State v. Phillips*, 511 S.W.2d 841, 844 (Mo.1974); *State v. Hawkins*, 581 S.W.2d 102, 104 (Mo.App.1979); *State v. Jones*, 545 S.W.2d 659, 666 (Mo.

**3.** The giving of instructions similar to MAI–CR 1.10, commonly referred to as "hammer" instructions, has been upheld since before the turn of the century. *See, e. g., State v. Pierce*,

136 Mo. 34, 37 S.W. 815 (1896). The language presently contained in MAI–CR 1.10 appears and was approved as early as 1962. *See State v. Bozarth*, 361 S.W.2d 819, 826 (Mo.1962).

App.1976); *State v. Jenkins*, 516 S.W.2d 522, 528 (Mo.App.1974).

Appellant's contention is nothing more than speculation and is refuted by the court's instruction to the jury. Rather than to coerce a juror, MAI–CR 1.10 admonishes him that he should never "agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue." "Such a caution is the crux of the instruction" and is consistent with the basic duty of a juror and the fundamental concept of a fair trial. *State v. Hayes*, 563 S.W.2d 11, 12 (Mo. banc 1978). (The judgment was reversed because the trial court omitted this language in its instruction to the jury.) In addition, the jury after being sworn to try the case, is instructed by the court that: "No statement, ruling or remark that I may make during the trial is intended to indicate my opinion of what the facts are."

Accordingly, the court did not abuse its discretion by reading MAI–CR 1.10 after receiving voluntary, unsolicited information that eleven jurors favored a verdict of robbery in the first degree and one favored stealing from the person.

*State v. Sanders*, 552 S.W.2d 39 (Mo.App. 1977), is one of the conflicting cases cited by the court of appeals. In that case the court held that the giving of MAI–CR 1.10 after the trial judge learned the jury was split nine to three in favor of conviction was error, and that under the facts of the case, principally that it took only ten minutes for the jury to reach a verdict after the instruction was given, the instruction was coercive and required reversal.

The second conflicting case is *State v. Johnson*, 610 S.W.2d 101 (Mo.App.1980). Following submission of the case, the jury deliberated for approximately three hours. The jury then sent a message to the trial judge indicating it was deadlocked ten to two for conviction. Upon receipt of the message, the court gave MAI–CR 1.10.

The court of appeals reversed upon a conclusion that *State v. Holt*, 592 S.W.2d 759 (Mo. banc 1980), controlled the case. In *State v. Holt, supra,* the jury returned to court one hour and twenty minutes after retiring to consider its verdict and reported that it was deadlocked. The court then asked the foreman to state the numerical division without saying which way the vote was. The foreman replied, "Nine guilty—," before the court stopped him and repeated that he wanted just a numerical division. The foreman responded, "Nine and three." The court determined from questioning the jury that there was no possibility of the jury reaching a verdict, and declared a mistrial. After defendant's second trial resulted in a conviction, he contended that double jeopardy resulted from being tried a second time after the court had declared a mistrial before the jury had adequate and reasonable time to consider its verdict. The court held that the trial court acted within its sound discretion in declaring a mistrial and that appellant was not put in double jeopardy by his second trial. The Court stated:

> Thanks to the foreman's blunder, the trial judge found himself in a difficult situation. Knowing that the jury was nine to three against the appellant, for the court to return them for further deliberation would be a clear signal that the judge, who knew how they stood, thought they were on the right track. It would inevitably make appellant's three jurors doubtful and apprehensive about continuing to hold out. The appellant could, with justification, contend that sending the jury back at 12:45 or 1:00 o'clock in the morning, when the judge knew they were nine to three for conviction, was a tactic to give the state more leverage to convict the appellant. It would be different if the judge knew only that the jury stood nine to three, because then his attempt to bring about a verdict by requiring further deliberation would be made without the court's knowing which side would likely be the beneficiary of his action. Under the circumstances before him, the only way the court could avoid showing favoritism to the state was to

declare a mistrial. His action was not over hasty or rash.

*Id.* at 772. The court of appeals concluded in *State v. Johnson, supra,* that:

If, as in *Holt, supra,* the mere requirement that the jury continue deliberations is suspect, it stands to reason that the giving of MAI–CR 1.10, under like conditions, is even more suspect.

It is the opinion of this court that both the requirement of continued or further deliberations, or the giving of MAI–CR 1.10, (the so-called "hammer instruction") to a jury, subsequent to disclosure to the trial judge that the jury is deadlocked and the vote on how the jurors stand on the issue of guilt or innocence, or conviction or acquittal, constitutes prejudicial error.

*Id.* at 104.

MAI–CR 1.10 was not involved in *State v. Holt, supra.* The issue was whether the court erred in declaring a mistrial after the jury interrupted its deliberations, advised the court how it stood on the issue of guilt, and further advised that there was no possibility of reaching a verdict. The extension of *State v. Holt, supra,* in *State v. Johnson, supra,* is disapproved; and to the extent *State v. Sanders, supra,* is inconsistent with this opinion, it, too, is no longer to be followed.

■ Appellant contends also that the trial court erred in admitting evidence of his prior conviction in Wisconsin under the Second Offender Act. At trial, outside the presence of the jury, the state introduced certified copies of a Wisconsin criminal warrant, judgment of conviction and sentence for rape, and execution of sentence in the Wisconsin State Prison. Appellant asserts that the prosecution has the burden of showing that when appellant pleaded guilty to the rape charge in Wisconsin that counsel was present, that the plea was made voluntarily and with understanding, that there was a factual basis for the plea, and that appellant waived his right to trial by jury.

This contention is answered in *State v. Quinn,* 594 S.W.2d 599 (Mo. banc 1980). Defendant Quinn objected to his prosecution under the Second Offender Act because it was not proved during the second trial that when he was convicted of the previous offense he had waived his right to a trial by jury and all the constitutional rights connected with it, or that the guilty plea had a factual basis. The Court rejected defendant's argument and held that the certified records presented by the state were not facially invalid, and were sufficient to support application of the Second Offender Act. The Court further noted that appellant had presented no evidence to support his challenge. *Id.* at 602–03.

In the present case, defendant presented no evidence of invalidity of the prior conviction and the record did not disclose any invalidity on its face. The trial court was correct in applying the Second Offender Act.

Affirmed.

RENDLEN and MORGAN, JJ., concur.

WELLIVER, J., concurs in separate concurring opinion filed.

DONNELLY, C. J., concurs and concurs in separate concurring opinion of WELLIVER, J.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of SEILER, J.

WELLIVER, Judge, concurring.

I reluctantly concur. My reluctance is because the principal opinion approves the giving of the so-called "Hammer Instruction", MAI–CR 1.10, during the deliberations of the jury. Every trial lawyer has had the experience of either benefitting from or being the victim of the prejudicial effect resulting from the giving of this instruction. Trial lawyers also have been

aware that so long as jurors are prohibited from impeaching their verdicts, there was little or no chance that an appellate court would either find prejudice or change the jury verdict.

The prejudice in these cases does not flow from the wording of the instruction. The instruction is a proper statement of the law and its content is unassailable. The prejudice does flow from the psychological impact of the instruction being given during the jury deliberations and from the undue emphasis accorded the instruction as a result of its being given separate and apart from all of the other instructions.

While I am reluctant to abolish the instruction by judicial opinion, I would support changing MAI to make the "Hammer Instruction" a mandatory instruction in all cases, both criminal and civil, with directions that it be given together with all other instructions when the case is submitted to the jury.

SEILER, Judge, dissenting.

It is not for nothing that MAI–CR 1.10 throughout the Missouri court system, from trial to appellate courts, is referred to as the "hammer." Why is it called the "hammer" by judges and lawyers alike if not in recognition of its inherent coercive quality? Instead of expanding the circumstances in which it can be used, as the proposed opinion does, I believe we should give serious consideration to abolishing the instruction altogether, or at least prohibiting its use when the judge is aware which way the jury is leaning and the jury is aware that he knows. We all know it is given for the purpose of inducing a verdict—in other words, to influence a jury which is in disagreement. It is particularly coercive when the jury knows that the judge knows how they stand as to guilt or innocence. What else could it mean to the lone juror in this case except that the judge believed he should reconsider his vote? Does any one seriously contend the jury thought the judge meant that the eleven who were for

guilt should reconsider their vote? Defendant's contention that he was prejudiced under these circumstances is not speculation—it is based on plain common sense. Of course, there is no way defendant can prove in court what the jurors thought, as jurors are not permitted to testify in impeachment of their verdict. *Romandel v. Kansas City Public Service Co.*, 254 S.W.2d 585, 595 (Mo. 1953). But that does not mean we should ignore the effect we know this instruction would have on the average juror who is on the minority side, especially when the vote is eleven to one.

The boiler plate language in MAI–CR 1.10 about "no juror should ever find as a fact that which under the evidence and his conscience he believes to be untrue" is self-serving protestation, buried in the instruction, after the judge, knowing how the jury stands on guilt or innocence, has made it plain that there should be a verdict in *every* case and that all this has taken "considerable time and effort", the unspoken implication being that there is something unworthy or unfit in the minority not yielding to the majority. It tends to make the minority feel guilty or out of step.

It is not correct to imply there must be a verdict in every case. The jury has the right to remain in disagreement, to end up a hung jury, just as much as it has a right to arrive at a verdict. No jury has to arrive at a verdict. It has the power to return a verdict for one side or the other or to disagree on any verdict. It is an abuse of the jury system to imply or declare otherwise.

It is vital to the jury system that once the jury retires to consider its verdict that its independence be scrupulously observed. There is no more justification for letting the judge interfere with this independence than there would be for letting the sheriff or the lawyers try to influence the jury after it had retired. We long ago decided in Missouri that once the jury gets the case, then the outcome is solely in the hands of the jury. That is one reason why we insist on a unanimous verdict in a criminal case.

The "hammer" however, is a way of telling juries that they are not free to decide as they see fit, that they should instead come to an agreement, because the judge believes they should, particularly where the jury knows the judge knows how they stand as to guilt or innocence. It introduces extraneous and improper factors. It misstates the law. It is not true that parties are necessarily entitled to have their rights determined in every case, as though there is something wrong if the jurors do not arrive at a verdict or that the jurors are somehow liable to society or the parties if a verdict is not reached. Nor is it true that because a lawsuit involves time and money that the jury must reach a verdict in every case. What relevance do time and money have to questions of guilt or innocence?

The jury system is under attack. It is shrinking in size, in usage, and in strength. The "hammer" instruction, particularly as it was used here, produces still further weakening of the jury system. It brings in an outside influence to interfere with the jury's deliberations after the jury has retired to consider its verdict, the very time when it should be held sacrosanct. It is even worse when, as here, the outside influence is brought to bear by the judge himself when the jury knows he knows how they stand. It is a direct assault by the judge on the independence of the jury, no matter how noble the motive of the judge.[1]

The principal opinion neatly avoids the issue by saying that since the "crux of the instruction" is the admonishment that no juror should "agree to a verdict that violates the instruction of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue", any contention that the instruction is coercive is refuted by the terms of the instruction. Under this reasoning, the giving of MAI–CR 1.10 would always be error free and safely within the discretion of the trial court, no matter what the facts were, as the instruction would always contain the saving language. We should not issue our guaranty that giving MAI–CR 1.10 will be error free. This is the effect of the above reasoning. This would mean the action of the trial judge in giving the hammer is beyond review, a dangerous doctrine.

The judge's action in requiring further deliberation under MAI–CR 1.10 when the jury knew he was aware they were eleven to one for conviction spoke much louder than his words. The judge abused his discretion and we should say so.

I dissent and would reverse and remand for a new trial.

---

1. The proposed opinion states that "hammer" instructions have been upheld since before the turn of the century. Significantly, however, the opinion does not cite any case upholding the giving of the "hammer" when as here, the judge knew how the jury stood on guilt or innocence and the jury knew that the judge knew.