STATE of Missouri, Respondent,

v.

Frederick STARKS, Appellant.

No. 54629.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 15, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 18, 1991.

Application to Transfer Denied
Jan. 28, 1992.

David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant appeals his conviction on four counts of first degree robbery and one count of attempted first degree robbery. We affirm.

On Sunday morning, April 19, 1987, at about 6:40 a.m. defendant's co-defendant, Kevin Williams, entered the Eat–Rite Din-

er. When asked by Ms. Bachelor, the grill cook and only employee on the premises, if she could help him, he pulled a sawed-off shotgun from under his shirt and demanded that Ms. Bachelor and then the four customers, Mr. Chott, Mr. Power, Mr. Burmeister, and Mr. Buechlein, give him all their money and jewelry. Ms. Bachelor put the money from the register and rolls of change from underneath the counter into a brown paper bag. The customers added their money and property to the bag. Williams slapped Mr. Burmeister after he insisted he had no money. Williams grabbed the brown bag, ordered everyone in the diner not to move or he would shoot, backed out the door and started running north. Mr. Buechlein, got part of the license plate number of the car which Williams entered, and Ms. Bachelor jotted it down. He also saw Williams hold the shotgun as he entered the car. Ms. Bachelor called the police, who arrived a few minutes later.

Officer Robinson, on his way home from his shift, passed the diner and saw Williams standing inside with a sawed off shotgun facing the counter. He drove to the rear of the diner and saw defendant sitting in the driver's seat of a car with the front passenger door open, eating a hamburger. He observed Williams leave the diner and enter the car while holding the gun and the bag. The car took off, and Officer Robinson followed it. At one point he lost sight of the car for no more than two minutes. He found it again parked in front of an apartment, later identified as that of defendant's girlfriend, and saw defendant coming out of the building. Officer Robinson arrested Williams and defendant with the assistance of another officer. The officers found a brown bag in the car with the money and property stolen at the diner but never found the sawed off shotgun.

A joint trial of Kevin Williams and defendant began on January 25, 1988. On January 29, 1988 the jury found defendant guilty of four counts of first degree robbery and one count of attempted robbery. On March 25, 1988, the trial judge sentenced defendant as a prior offender to the same punishment as co-defendant Kevin Williams, a life term on Count I, probation denied, thirty years on Count II to run consecutively to sentence on Count I, thirty years each on Counts III and IV, and fifteen years on Count V. Sentences imposed on Counts III, IV, and V are to run concurrently with that of Count II. Defendant filed a timely appeal. The trial court denied his 29.15 motion for post-conviction relief on January 30, 1989.

## I.

### Hammer Instruction

In his first point, defendant contends the trial court erred by failing to declare a mistrial, because the jury declared itself deadlocked and the court coerced the jury by reading MAI–CR3d 312.10 (1987), the hammer instruction. The court denied defendant's motion for a mistrial.

A court should declare a mistrial, a drastic remedy, only under extraordinary circumstances. *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985) *cert. denied* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). The trial court is in the best position to determine if a mistrial is appropriate. *State v. Anderson*, 698 S.W.2d 849, 852 (Mo. banc 1985). To find an abuse of discretion, the appellate court must find the jury was coerced, based on what was said and done at the time of trial. *Id.* at 853. A jury verdict achieved by coercion, judged by the totality of the circumstances, must be set aside. *State v. McNail*, 767 S.W.2d 84, 86 (Mo.App.1989). Whether and when to read the hammer instruction also rests with the trial court's discretion. *State v. Broadux*, 618 S.W.2d 649, 651 (Mo. banc 1981); *State v. Anderson, supra*, 698 S.W.2d at 853.

Defendant asserts that, under the circumstances of this trial, reading the hammer instruction coerced the jury. The jury began its deliberations at 3:36 p.m. on Friday, January 29, 1988. After consultation with the attorneys, the court granted the jury request to have exhibits sent to the jurors and dinner. Sandwiches were delivered about 6:00 p.m. At 7:00 p.m. the jury sent a message stating:

The jury is split eleven to one on Mr. Starks. We all agree that no decision can be reached. We have a verdict on Mr. Williams, but would like to know what we should do about our split?

At 7:30, after defendant made a motion to declare the jury hung, the court sent the following message: "The Court requests the Jury to continue to deliberate and to follow the instructions as given." At 8:00 p.m., the judge informed the attorneys that he intended to bring the jury into the courtroom, and if the jury remained eleven to one, to read MAI–CR3d 312.10 and "send them into some additional deliberations." Defendant moved for a mistrial, and if that was overruled, moved the court to declare a mistrial after polling the jury and before reading the hammer instruction. After the jury returned to the courtroom, the following exchange occurred:

COURT: ... I would ask you to listen carefully to the question that's proposed without indicating the direction in which the Jury is voting.... [H]as there been any change now numerically or is the number the same as indicated earlier?

FOREPERSON: It's the same.

COURT: Do you believe you would benefit by some further deliberations?

FOREPERSON: I do not believe so, your Honor.

COURT: What the Court is going to do is give you an additional instruction. I am going to read it at this time, and I invite your careful attention to the reading. [The court read MAI–CR3d 312.10 at 8:08 p.m.]

COURT: I ask that the Jury continue to deliberate. We will be in temporary recess for that purpose.

At 8:40 the Jury sent a message to the court requesting it to define the word " 'aided' as stated in 'aided or encouraged Kevin Williams in committing that offense.' " The court responded that "[t]he jury must be guided by the instructions as given." At 8:55 p.m. the jury delivered guilty verdicts on all counts.

■ Having been told that the jury is deadlocked does not preclude the trial court from reading the hammer instruction and requiring the jury to continue deliberations. *Anderson,* at 853.

Factors that appellate courts have considered when determining whether the trial court coerced the jury include the amount of time that the jury deliberates before the hammer instruction is read, the amount of time that elapses between the reading of the hammer instruction and the verdict, whether the trial judge knows numerically how the jury is split and the position of the majority, and whether the giving of the instruction conforms with the Notes on Use.

■ No abuse of trial court discretion was found in the following cases: *State v. Anderson,* 698 S.W.2d 849, 852–53 (Mo. banc 1985) (jury deliberated about four hours, jury informed court it was deadlocked, hammer instruction read, and jury required to continue deliberating. Defendant argued it was coercive to require the jury to continue deliberations after it indicated deadlock an hour after the hammer instruction was read. "The trial court is not compelled to accept at face value the jury's contention that it [is] hopelessly hung." *Id.* at 853. The court pointed out that it would be error for the trial court to declare mistrial if such a decision was hastily made.); *State v. Broadux,* 618 S.W.2d 649, 652–653 (Mo. banc 1981) (no abuse of discretion to read the hammer instruction "after receiving voluntary, unsolicited information that eleven jurors favored a verdict of robbery in the first degree and one favored stealing from the person." It overruled *State v. Sanders,* 552 S.W.2d 39 (Mo.App.1977) and disapproved of *State v. Johnson,* 610 S.W.2d 101 (Mo.App.1980) and *State v. Holt,* 592 S.W.2d 759 (Mo. banc 1980) to the extent that they held that the hammer instruction or words from the trial judge coercive when the judge knows the position of the majority.); *State v. El Dorado Management Corp., Inc.,* 801 S.W.2d 401, 411 (Mo.App.1990) (jury deliberated four and a half hours, and the court read the hammer instruction after learning the jury was evenly split.); *State v. Marsh,* 792 S.W.2d 687, 692 (Mo.App.1990) (Jury deliberated more than five and a half

hours, verdict delivered four and a half hours after hammer instruction read, and the trial court did not know how the jury lined up numerically.); *State v. Harris,* 751 S.W.2d 131, 132 (Mo.App.1988) (the fact that a jury returns a verdict shortly after the hammer instruction is read, does not, by itself, establish coercion.); *State v. Hyzer,* 729 S.W.2d 576, 578 (Mo.App.1987) (jury deliberated over one hour, the foreman announced a hung jury, both attorneys suggested giving the hammer instruction, the jury called, said they were split ten to two without indicating the position of the majority, the hammer instruction was given, one hour later the jury reached a verdict.); *State v. Sutton,* 699 S.W.2d 783, 786 (Mo.App.1985) (jury deliberated over five hours, jury announced it was divided ten to two without indicating the majority position; the giving of the instruction conformed with Notes on Use.); *State v. Smith,* 686 S.W.2d 43, 45 (Mo.App.1985) (after two and a half hours of deliberation, jury was divided ten to two, court gave the hammer instruction, jury delivered a verdict fifty minutes later.); *State v. Newman,* 651 S.W.2d 185, 187 (Mo.App.1983) (jury deliberated one hour and forty-five minutes, foreperson advised the judge that further deliberation was useless, hammer instruction given, one hour later verdict returned.); *State v. Gardner,* 600 S.W.2d 614, 623–624 (Mo.App.) *cert.* denied, 449 U.S. 1020, 101 S.Ct. 585, 66 L.Ed.2d 481 (1980) (after four hours of deliberation, foreperson did not think further time would be "fruitful," judge asked how numbers stood without indicating position of split, hammer given).

The judge correctly followed the Notes for MAI–CR3d 312.10. The instruction is to be given when the court deems the jury has deliberated an appropriate length of time and when a communication from the jury indicates deadlock. Before giving the hammer instruction, the attorneys must have a chance to make objections on the record. The instruction shall be numbered, read, and handed to the jury. The record must show the time the jury retired, the time the instruction was given, and the time the verdict was delivered. The trial court did not abuse its discretion or coerce the jury when it delivered the hammer instruction.

Defendant's reliance on *State v. McNail,* 767 S.W.2d 84 (Mo.App.1989), *State v. Mason,* 588 S.W.2d 731 (Mo.App.1979), *State v. Holt, supra,* and *State v. Sanders, supra,* is misplaced. *Holt* and *Sanders* were disapproved or overruled to the extent they conflicted with the holding in *Broadux, supra.* In *McNail,* the court did not err by giving the hammer instruction after seven hours of deadlock on a Saturday, but by suggesting one hour later that the jury would be held overnight and into the Sunday of a three day state holiday for deliberations. *McNail,* 767 S.W.2d at 87. In *State v. Mason,* the lower court had coerced the verdict because it set a deadline by which it expected a verdict to be declared and not because of an improper use of the hammer instruction. *Id.* 588 S.W.2d at 734. Point denied.

## II.

### Admission of Affidavit

In his second point, defendant contends the court erred when it excluded Kevin Williams' alleged pre-trial affidavit exonerating defendant from having knowledge of the robbery.

In chambers, defendant's attorney advised the trial court she intended to call co-defendant Williams as a witness during defendant Starks' case. Mr. Williams' attorney told the court his client would invoke the Fifth Amendment privilege against self-incrimination and would refuse to answer any questions. The trial court accepted counsel's statement and, relying upon *State v. Loggins,* 698 S.W.2d 915, 918 (Mo.App.1985), ruled that Mr. Williams would not be required to plead his Fifth Amendment privilege in the presence of the jury.

Defendant Starks' attorney then told the court she wished to introduce into evidence an "affidavit" of co-defendant Williams in which he exonerated defendant Starks. The court refused to admit the "affidavit" into evidence but told counsel to have it

marked and filed. Apparently this was never done. The "affidavit" has not been made a part of the record on appeal. It has not been filed in this court. There is no indication in the record that the content of the "affidavit" was made known to the trial court other than trial counsel's conclusory statement that it "exonerated" her client. The record is silent concerning the time at which the "affidavit" was made and the circumstances surrounding it. The transcript fails to disclose any suggestion presented to the trial court that the "affidavit" could be admissible under any exception to the hearsay rule. The record fails to demonstrate the matter was preserved for appellate review. *State v. Schneider*, 736 S.W.2d 392, 401 (Mo. banc 1987) cert. denied 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988).

Furthermore, no effort to obtain separate trials of the two defendants was made pursuant to Rule 24.06(b), thereby removing any possibility of prejudice to Mr. Williams. The claim of defendant's counsel that she expected Mr. Williams to testify and to exonerate her client appears disingenuous in light of her earlier statement during voir dire that it was unlikely that either defendant would testify.

 Finally, assuming the "affidavit" is accurately set forth in the argument portion of defendant's brief, we look to the merits of his argument in order to allay any future concerns regarding the adequacy of defendant's representation. Defendant argues, for the first time, that the "affidavit" was admissible under the admission against penal interest exception to the hearsay rule.[1] In the "affidavit" Mr. Williams purportedly stated the defendant was giving him a ride home and stopped at the diner so Williams could get a cup of coffee. He claims defendant had "no prior or immediate knowledge of any robbery." Noticeably absent from the affidavit is Mr. Williams' admission that he perpetrated the robbery or even that a robbery occurred.

Defendant concedes the general rule in Missouri that declarations against penal in-

terest by a third party are not admissible as an exception to the hearsay rule in criminal proceedings. *State v. Turner*, 623 S.W.2d 4, 8 (Mo. banc 1981); *State v. Rogers*, 758 S.W.2d 199, 201 (Mo.App.1988). An exception to the general rules that such statements may be found admissible under circumstances tending to establish their reliability and trustworthiness. Reliability and trustworthiness are not demonstrated merely by the fact that the statement may be against the penal interest of the declarant. *State v. Acklin*, 737 S.W.2d 743, 745 (Mo.App.1987). Rather, the statement is admissible only where buttressed by collateral and substantial proof of reliability. *Id.*

The Missouri Supreme Court has narrowly construed the admissibility of third party declarations against penal interest to cases in which the hearsay admission by the declarant constitutes an acknowledgment of his complicity which, if true, would also exonerate the defendant. *State v. Turner*, 623 S.W.2d at 9. In the "affidavit" Mr. Williams does not admit his complicity in the robbery or even that a robbery took place. There is a total absence of evidence tending to corroborate or support this statement. Even if properly preserved for appellate review, the trial court did not err in excluding the "affidavit".

### III.

### Batson Challenge

 In his third point, defendant contends the trial court erred in denying his Batson challenge. *Batson v. Kentucky*, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

The proliferation of decisions regarding alleged violations of the Batson rule renders unnecessary any iteration of the principles under which such claims are to be reviewed. In this case the State used four of its twelve peremptory challenges to strike black venire persons and eight to strike white venire persons. The original panel of prospective jurors consisted of

---

1. Although frequently used interchangeably, it is more precise to refer to the admissions of a party and the declarations against penal interest of a non-party.

twelve blacks and forty-one whites (23% black). The jury consisted of three blacks and nine whites (25% black), plus one white and one black alternate. These facts undercut any inference of any impermissible discrimination. *State v. Griffin*, 756 S.W.2d 475, 482 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Smith*, 791 S.W.2d 744, 748 (Mo.App.1990).

Moreover, the prosecutor furnished neutral, non-discriminatory reasons explaining his strikes of black venire persons which were accepted by the trial court. We have carefully reviewed the record and we find no basis for overruling this exercise of trial court discretion.

Judgment affirmed.

SMITH, P.J., and SATZ, J., concur.