**STATE of Missouri, Respondent,**

v.

**Robert Dean JACKSON, Appellant.**

**No. WD 48342.**

Missouri Court of Appeals,
Western District.

April 4, 1995.

Emmett D. Queener, Office of the State Public Defender, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michelle A. Freund, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

Robert Dean Jackson appeals from his conviction of nine counts of sodomy,

§ 566.060, RSMo 1986 and Supp.1990. He was sentenced as a prior offender to fifteen years imprisonment on Counts I and II, thirty years imprisonment on Counts III, IV and VII, and life imprisonment on Counts V, VI, VIII and X,[1] with all sentences to be served consecutively.

The sufficiency of the evidence is disputed only as to Counts III and IV. Viewed in the light most favorable to the verdict, the evidence established that on several occasions between August 1989 and February 1992, the defendant sodomized the victim, T.K., in her home. The defendant was a boyfriend of T.K.'s mother who was living with them when the incidents occurred. T.K. was ten years old at the time of the trial. She testified that the first incident occurred when she was in the first grade, and the final incident occurred when she was in the third grade. Her testimony reflects several acts of oral and anal sodomy by the defendant which took place in various rooms of the home. T.K.'s mother testified that the defendant had admitted to her that he had attempted "to do something with [T.K.] anally." A nurse practitioner who performed a "SAFE" exam[2] on T.K. testified that the physical examination indicated that T.K. had been sexually abused. The nurse also testified that T.K. told her that the defendant had touched her bottom area. The defendant denied any sexual contact with T.K.

The jury found the defendant guilty on nine counts of sodomy. He was sentenced to a total of four life sentences plus 120 years, with all sentences to be served consecutively. He filed his notice of appeal on August 31, 1993.

The defendant raises three points on appeal. In his first point, the defendant contends the trial court erred in giving the "hammer" instruction, MAI–CR3d 312.10,[3]

---

1. Count IX was dismissed by the trial court.

2. A SAFE exam is an objective exam developed by the state for use in identifying sexual abuse in children.

3. MAI–CR3d 312.10 states that:
   You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the

because the giving of this instruction coerced the jury into returning a guilty verdict in violation of the defendant's rights to due process and a fair trial. The defendant claims the instruction impeded a free and open discussion among the jurors.

■ "The length of time a jury is allowed to deliberate and the decision whether to give MAI–CR3d 312.10 are within the discretion of the trial court." *State v. Kinder,* 858 S.W.2d 838, 839 (Mo.App.1993). To establish that the trial court abused its discretion, it must be shown that, based on the record of what was said and done at the time of the trial, the jury's verdict was coerced. *State v. Parson,* 815 S.W.2d 106, 107 (Mo.App.1991). "The [hammer] instruction itself is not coercive, as it urges frank and open discussion, tolerance, and the desirability of a unanimous verdict but cautions each juror against basing a verdict on evidence he does not believe is true." *Kinder,* 858 S.W.2d at 840.

■ In determining whether the jury's verdict was coerced, appellate courts consider several factors including: "the amount of time that the jury deliberates before the hammer instruction is read, the amount of time that elapses between the reading of the hammer instruction and the verdict, whether the trial judge knows numerically how the jury is split and the position of the majority, and whether the giving of the instruction conforms with the Notes on Use." *State v. Starks,* 820 S.W.2d 527, 529 (Mo.App.1991).

■ In this case, the jury began its deliberations at 11:02 a.m. At 1:30 p.m., the trial court received a note from the jury signed by the jury foreman, James Sturm, which stated:

We have one juror that was accused at one time of sexual misconduct. He is very bias [sic] and will in no way take the word of any child under the age of 15 years of age for any reason. This is causing a problem in our decision making.

The trial court then informed counsel of its intention to give MAI–CR3d 312.10, the "hammer" instruction. Defense counsel objected and the trial court overruled the objection. At 1:32 p.m., the jury was returned to the courtroom and the court addressed the jury:

Mr. Sturm, I have received a communication from the jury and you signed that as foreman. Based upon the communication, I've determined that there apparently is a deadlock in the jury's deliberations. And I will give you an additional instruction.

The court then read MAI–CR3d 312.10 to the jury. At 1:35 p.m., the jury retired for further deliberations and returned with a verdict at 2:08 p.m., finding the defendant guilty on all nine counts of sodomy.

"The fact that a jury returns a verdict shortly after the 'hammer instruction' is given does not establish coercion." *Parson,* 815 S.W.2d at 107. In this case, the jury deliberated two and one-half hours before the hammer instruction was given and an additional thirty-three minutes after the instruction was given before returning a verdict. Numerous other cases involving similar or shorter periods of jury deliberation have found no abuse of discretion. *See State v. Hoopingarner,* 845 S.W.2d 89, 95–96 (Mo.App.1993) (jury deliberated three hours and five minutes before hammer instruction was given and returned verdict thirty-five minutes after instruction); *Kinder,* 858 S.W.2d 838, 839 (Mo.App.1993) (deliberation for two hours and nineteen minutes before instruction given and verdict returned ten minutes after instruction); *State v. Harris,* 751 S.W.2d 131, 132 (Mo.App.1988) (deliberation for two hours and fifteen minutes before instruction given and verdict returned twenty minutes after instruction); *State v. Calmese,* 657 S.W.2d 662, 663 (Mo.App.1983) (deliberation for two and one-half hours before instruction given and verdict returned one-half hour after instruction). We conclude there was no coercion with regard to the length of time which elapsed before or after the giving of the hammer instruction.

■ With regard to whether the trial judge knew the numerical division of the jury, the defendant claims the jury's note revealed a vote of eleven to one in favor of

instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt.

conviction. He argues that the court coerced a unanimous guilty vote by giving the hammer instruction because the one juror must have felt compelled to reconsider his position. A similar argument was rejected by the Missouri Supreme Court in *State v. Broadux,* 618 S.W.2d 649, 651 (Mo. banc 1981). In that case, the defendant argued that since the jury's note reflected an eleven to one split in favor of first degree robbery (with one juror in favor of stealing), the reading of the hammer instruction placed pressure on the one juror to conform to the majority vote because to that juror, the instruction meant that the judge thought he should reconsider his vote. *Id.* The court noted that the defendant's contention was "nothing more than speculation" and "refuted by the court's instruction to the jury" and found no abuse of discretion in giving the hammer instruction after receiving the "voluntary, unsolicited information" that eleven jurors favored a first degree robbery verdict with one juror favoring a verdict of stealing. *Id.* at 652.

In this case, the communication from the jury was voluntary, unsolicited information indicating that the jury was having a problem making a decision because one of the jurors could not "take the word of any child under the age of fifteen." The note did not state the position of the majority or specify how the jury was split numerically.

■ The record also reflects that the trial court complied with the Notes on Use for MAI–CR3d 312.10 in giving the hammer instruction. The Notes on Use 2 for MAI–CR3d 312.10 provide that the instruction should be given "when the Court deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked." In accordance with the Notes on Use 3, the court allowed counsel on both sides to make objections on the record prior to giving the hammer instruction. The instruction was also numbered, read and submitted to the jury as directed by the Notes on Use 4. In addition, the court properly noted the time that the jury initially retired to deliberate, the time that the instruction was given and the time the jury returned its verdict, as required by the Notes on Use 5.

The defendant's reliance on *State v. Burns,* 808 S.W.2d 1 (Mo.App.1991), and *State v. McNail,* 767 S.W.2d 84 (Mo.App.1989), is misplaced. Neither of those cases involved error due to the giving of the hammer instruction. In *Burns,* the court erroneously instructed the jury, one and one-half hours after giving the hammer instruction, that it had to return a verdict on each of two counts charged against the defendant. The court in that case also failed to consult with counsel for either side before instructing the jury to reach a verdict, and the verdict was delivered ten minutes after the court gave the erroneous instruction. *Burns,* 808 S.W.2d at 3. Similarly, in *McNail,* the trial court did not err because it gave the hammer instruction, but because it virtually directed that a verdict be reached and implicitly indicated that it would hold the jury until a verdict was reached. In that case, the hammer instruction was given after several hours of deliberation and after the jury declared itself deadlocked. *McNail,* 767 S.W.2d at 86. After the hammer instruction was given, the jury continued to deliberate. Having failed to produce a verdict after another hour of deliberation, the jury was advised that it would be held over until the next day, a Sunday, for further deliberations, during a three-day state holiday weekend. *Id.* at 87. A verdict was delivered ten minutes later. *Id.*

In this case, the court properly gave the instruction after determining that the jury was deadlocked and after allowing counsel to make objections. The record does not show that the jury's verdict was coerced or that the trial court abused its discretion in giving the instruction. Point denied.

In his second point, the defendant contends the trial court erred in overruling his motion for judgment of acquittal and in sentencing him on Counts III and IV because the state failed to present sufficient evidence to convince a trier of fact that he committed the sodomy offenses described in those counts. Specifically, the defendant claims the evidence was insufficient because T.K.'s testimony did not support the allegations.

■ In reviewing the sufficiency of the evidence, this court accepts as true all evi-

dence and inferences favorable to the state and disregards all contrary evidence and inferences. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). This court does not weigh the evidence or determine the reliability or credibility of witnesses. *State v. Middleton*, 854 S.W.2d 504, 506 (Mo.App.1993). Our review is limited to a determination of whether there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt. *State v. Martin*, 852 S.W.2d 844, 848–49 (Mo. App.1992).

■ In order to sustain a conviction, the state must prove beyond a reasonable doubt that the defendant committed each element of the charged offense. *State v. Johnson*, 741 S.W.2d 70, 73 (Mo.App.1987). "Where the act constituting the crime is specified in the charge, the State is held to proof of that act; and a defendant may be convicted only on that act." *State v. Armstrong*, 863 S.W.2d 374, 377 (Mo.App.1993).

Counts III and IV of the first amended information alleged that the defendant committed separate acts of sodomy by having deviate sexual intercourse with T.K. in violation of § 566.060. These counts were submitted to the jury as Instructions Nos. 7 and 8, respectively. Both the amended information and the verdict-directing instructions specified that the alleged acts occurred in the bathroom. The acts of sodomy submitted to the jury in the instructions are consistent with the sequence of incidents described in the amended information. Each of the verdict directors identifies the conduct, the period of time during which the conduct is to have occurred and the location where the conduct occurred. Instruction No. 7 provided that in order to find the defendant guilty of sodomy under Count III, the jury had to find that "between August 1989 and February 1992 ... the defendant, while in the bathroom, caused contact between defendant's penis and the anus of [T.K.]." Instruction No. 8 (Count IV) mirrors Instruction No. 7, but adds that the conduct occurred "after the date in Count 3."

At trial, the state presented the sodomy evidence as a sequence of separate acts which occurred in various locations of T.K.'s home over a period of time beginning in August 1989 through February 1992. During direct examination, T.K. described several acts of sodomy which took place in various rooms of her home between August 1989 and February 1992. The first two incidents described by T.K. were two separate acts of oral sodomy which occurred in the bedroom on the same day when she was in the first grade. She then described an incident in the bathroom which occurred on more than one occasion when the defendant rubbed his penis on her vagina. T.K. next described an act of oral sodomy which occurred in the shower area of the bathroom on another occasion. She then recalled an incident in the bedroom where she had to "sit on [the defendant's] pee-pee." She also described several acts of oral sodomy occurring in the bedroom and living room. The final incident she described was an act of anal sodomy which occurred in the bathroom.

The defendant contends that the state failed to prove that the incident which T.K. described as having occurred in the bathroom on more than one occasion constituted deviate sexual intercourse, as alleged in Counts III and IV and pursuant to Instructions Nos. 7 and 8, because T.K.'s testimony did not establish that there was any contact between the defendant's penis and T.K.'s anus on those occasions.

■ Pursuant to § 566.060.3, a person commits the crime of sodomy if "he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." "Deviate sexual intercourse" is defined by § 566.010 as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." In this case, the state elicited testimony from T.K. concerning the incidents which occurred in the bathroom. T.K. testified that the defendant forced her to sit on the washing machine (which was in the bathroom area) with her legs on his shoulders while he rubbed his penis on her vagina. While this conduct is arguably sexual abuse

in the first degree,[4] it does not constitute deviate sexual intercourse within the meaning of the sodomy statute because it did not involve the "mouth, tongue, hand or anus." *See State v. Follin*, 829 S.W.2d 90, 91 (Mo. App.1992).

■■■ The state argues that T.K.'s testimony concerning the incident in the bedroom where she had to "sit on [the defendant's] pee-pee" is sufficient to show that the defendant committed the offenses alleged in Counts III and IV. Counts III and IV alleged that two separate acts of sodomy occurred in the bathroom. The instructions submitted by the state also specified that the acts occurred in the bathroom. The state now claims, however, that these acts occurred in the bedroom and urges us to disregard the "variance" between the jury instructions and the evidence because it does not matter whether the acts occurred in the bedroom or the bathroom.

While we agree that it is not necessary to prove the location where the offenses occurred in order to sustain a conviction on a sodomy charge, we believe the locations were included in the amended information and the verdict-directing instructions to aid in identifying and distinguishing between the different acts of sodomy committed by the defendant. The sodomy as delineated in Counts III through VIII, according to the victim's testimony, could only be established as having occurred between August 1989 and February 1992. Although T.K. was unable to recall any specific dates of the incidents at trial, she was able to recall with particularity the various rooms in which the conduct occurred. Her testimony concerning the various locations in the house where the acts occurred, though not an essential element of the charged offense, was significant for purposes of identifying and distinguishing between the numerous incidents of sodomy.

The incident in the bedroom which the state now claims supports a conviction on Counts III and IV appears to be a separate offense which was not included in the amended information or the jury instructions. We

find there was no evidence to support a conviction on Counts III and IV. The convictions on Counts III and IV are reversed.

In his final point, the defendant contends the trial court plainly erred in sentencing him pursuant to § 566.060, RSMo Supp.1990, on Counts III through VIII. Specifically, he claims that the sentencing was in violation of the ex post facto clauses of Article I, § 10 of the United States Constitution and Article I, § 13 of the Missouri Constitution because the state failed to prove that the acts alleged in Counts III through VIII occurred after August 28, 1990, the effective date of the 1990 amendment to § 566.060.

"An ex post facto law is one which proscribes an act criminal not so proscribed when committed or one which enlarges the penalty after the violation." *Wilkins v. State*, 802 S.W.2d 491, 503 (Mo. banc 1991). "Changes in the law which increase the punishment ... are subject to ex post facto prohibition." *State v. Hillis*, 748 S.W.2d 694, 697 (Mo.App.1988).

Under the 1986 version of § 566.060, sodomy with a child under the age of fourteen was a class B felony punishable by a maximum of fifteen years imprisonment unless the perpetrator inflicted serious physical injury or displayed a deadly weapon or dangerous instrument in a threatening manner, in which case the sodomy was a class A felony. The 1990 amendment to § 566.060, which went into effect on August 28, 1990, increased the punishment for sodomy with a child under the age of fourteen to life imprisonment or a term of years not less than five years.

Counts III through VIII charged the defendant with committing the crime of sodomy for having deviate sexual intercourse with T.K. between August 1989 and February 1992. The amended information identified the punishment for conviction on these offenses as "life imprisonment or a term of years not less than five years." After the defendant was convicted, the trial court sentenced him as a prior offender to thirty years

---

4. Section 566.100.2 provides that, "A person commits the crime of sexual abuse in the first degree if ... (2) He subjects another person who is less than twelve years old to sexual contact." The defendant was not charged with this offense in the amended information.

on Counts III, IV and VII and life imprisonment on Counts V and VI and VIII.

■ The state concedes that the evidence failed to establish whether the acts alleged in Counts III through VIII occurred before or after August 28, 1990. The state suggests that the appropriate remedy would be to set aside the sentences and remand the case for a hearing allowing it to present additional evidence to more precisely establish when the offensés occurred. In the alternative, the state requests that the defendant be resentenced under the 1986 statute.

The state cites two cases which it claims authorize the type of hearing requested. Neither case is applicable here. Both cases, *State v. Cobb*, 875 S.W.2d 533 (Mo. banc 1994), and *State v. Coomer*, 888 S.W.2d 356 (Mo.App.1994), involved sentences for DWI convictions which were remanded for the sole purpose of determining whether the defendant could be sentenced as a persistent offender. We have located no authority, however, which would permit the procedure suggested by the state. The state had the opportunity at trial to present evidence to establish that the acts alleged in Counts III through VIII occurred after August 1990, but failed to do so. The record clearly shows that the child could not remember the dates of the incidents. Although T.K. testified that she was in the first grade when the first two incidents occurred (Counts I and II) and in the third grade when the last incident occurred (Count X), she was unable to specify whether the other acts of sodomy occurred before or after August 1990.

■ Counts III through VIII alleged that the defendant committed the sodomy offenses "between August 1989 and February 1992." There is clearly a one-year window of time prior to the effective date of the amendment during which the defendant could have committed some, none, or all of the acts alleged in those counts. Those acts occurring before August 28, 1990, were punishable by a maximum of fifteen years imprisonment pursuant to the 1986 sodomy statute. For his convictions on Counts III through VIII, the defendant was sentenced to three life sentences and three thirty-year terms of imprisonment, to be served consecutively. If

these crimes were committed before the 1990 amendment, they were class B felonies. All of the sentences imposed on Counts III through VIII exceed the maximum punishment authorized by the 1986 statute for a class B felony. As such, the sentences would be in violation of the ex post facto clause since the defendant would be disadvantaged by the harsher penalty. *See Hillis*, 748 S.W.2d at 697–98. An enhanced penalty which violates the ex post facto laws works a manifest injustice. *Id.* at 698.

In this case, we are unable to make a determination as to whether the sentences are in violation of the ex post facto laws because it is unknown whether the crimes alleged in Counts III through VIII were committed before August 28, 1990. However, since the state failed to establish that any of the offenses alleged in those counts were committed after August 28, 1990, the trial court could not sentence the defendant to the more severe punishment since some of the offenses could have occurred prior to the effective date of the amendment. Sentencing under the amended version of the statute subjected the defendant to the greater punishment of life imprisonment for offenses which, had they occurred prior to August 28, 1990, would have carried a maximum punishment of fifteen years imprisonment. Manifest injustice would result if these sentences were left uncorrected.

The judgment of the trial court is reversed and the defendant discharged as to Counts III and IV. The convictions on all other counts are affirmed. The sentences on Counts V, VI, VII and VIII are set aside and the cause remanded for resentencing pursuant to the 1986 version of § 566.060. In all other respects, the judgment is affirmed.

All concur.