STATE of Missouri, Respondent,

v.

Michael GARRISON, Appellant.

No. 70020.

Missouri Court of Appeals,
Eastern District,
Division One.

April 15, 1997.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Michael Garrison ("defendant"), appeals the judgment of conviction entered by the Circuit Court of the County of St. Louis after a jury found him guilty of one count of first degree murder, RSMo § 565.020,[1] and one count of armed criminal action, RSMo § 571.015. We affirm.

The facts taken in the light most favorable to the verdict are as follows: Defendant believed Joseph Cochran ("victim") was responsible for stealing his television set. On December 27, 1994, victim arrived at defendant's apartment, defendant asked Tracey Blockton and another individual to leave. A third individual, Tyrone Tipton, remained in the apartment with victim and defendant. Tipton locked the front door. Defendant then "sprung" on victim and hit him. Victim fell, and defendant hit victim with various objects from the apartment including an iron. Defendant then grabbed a knife from the kitchen and stabbed victim in the face

and neck. Defendant subsequently left the apartment. He spoke with Blockton, saying, "I done had a bad day. Things ain't been going right. Why don't you just burn out." Defendant then returned to the apartment where victim was lying on the floor. Defendant proceeded to place a plastic bag over victim's head. Defendant gathered victim's body and the objects used to strike victim and, along with Tipton, drove to an area in St. Louis where he dumped the body.

Doris Dee was defendant's rival drug dealer in the neighborhood. On January 5, after Dee and defendant purchased bad drugs, defendant told Dee, "Don't you know if I kill a mother——— over a color tv, what I'm going to do to somebody about stealing my god—— money." About a week later, Dee reported this to the St. Louis City police, and defendant was arrested for victim's murder; defendant was thereafter charged, tried, and convicted. This appeal follows.

Defendant presents three issues for review. First, defendant claims the trial court abused its discretion and committed reversible error in overruling defendant's requests for a continuance in order to depose Dee, Blockton and Graham,[2] "very important witnesses." Second, defendant claims the court erred and abused its discretion in giving the "hammer" instruction. Third, defendant claims the trial court erred and abused its discretion in sustaining the state's hearsay objection and precluding certain statements of Officer Berra, which were potentially illustrative of Tipton's motive to lie. We find all three contentions without merit.

■ The issue of whether to deny the defendant's request for a continuance is within the sound discretion of the trial court. *State v. Menteer*, 845 S.W.2d 581, 584 (Mo. App. E.D.1992). "A very strong showing is required to prove abuse of that discretion, with the party requesting the continuance

---

1. All statutory references are to RSMo 1994.

2. Dr. Michael Graham is a forensic pathologist who testified for the state. The allegation concerning Graham's deposition is contained only in his point relied on and is not carried forward

into the brief by way of argument, citation to the record, or citation of authority. Therefore, this claim is waived. *State v. Isa*, 850 S.W.2d 876, 900–901 (Mo.banc 1993)

bearing the burden of showing prejudice." *Id.* In determining what constitutes prejudice, courts have found that lack of preparation by counsel, *State v. Wise,* 879 S.W.2d 494, 519 (Mo.banc 1994), and a late endorsement of witnesses who were subsequently made available to defense counsel's investigator two days before trial, *Menteer,* 845 S.W.2d at 585, did not constitute prejudice.

■ Defendant argues the denial of his request for a continuance effectively afforded him no opportunity to fully investigate the state's case against him. However, Doris Dee and Tracey Blockton were listed as state's witnesses as early as defendant's indictment on February 23, 1995. Further, Dee and Blockton were endorsed by the state as witnesses on October 17, 1995. Defendant made a motion to take depositions on November 14, 1995, less than one month before trial which was set for December 11, 1995. None of the witnesses appeared for their depositions. Dee was ill, and Blockton could not be found. On November 30, defendant made his motion for a continuance concerning Dee's deposition. The court determined defendant could depose her in the eleven days before trial and, if not, defendant could renew his request at that time. We presume defense did depose Dee before trial, as counsel never renewed his motion. Moreover, a review of the transcript shows counsel thoroughly cross-examined her at trial.

The state was unable to locate Blockton until the day of the trial. However, defendant was given an opportunity to interview Blockton at that time, and he did so that evening. Further, several months before the trial, defendant had access to Blockton's taped statement, as well as to her oral statements, which she had given to the City and County police. The state had never spoken to Blockton, and defendant admits Blockton called him on Friday before the trial saying she would not be testifying.

Given that defendant had months to depose the witnesses and did so in the days before trial, we find defendant had adequate opportunity to prepare; therefore, the trial court's denial of defendant's request for a continuance was proper. Point denied.

In his second point on appeal, defendant asserts the trial court erred and abused its discretion in giving the "hammer" instruction. Defendant maintains the giving of the hammer instruction—patterned after MAI–CR3d 312.10—coerced the jury into finding the defendant guilty, thereby lessening the state's burden of proof.

■ The trial court has discretion as to whether or when the hammer instruction should be read. *State v. Starks,* 820 S.W.2d 527, 528 (Mo.App. E.D.1991). The verdict will be set aside if the hammer instruction acts to coerce the jury. *Id.* The hammer instruction may be considered coercive if it appears the trial court was " 'virtually directing that a verdict be reached.' " *State v. Burns,* 808 S.W.2d 1, 3 (Mo.App. E.D.1991) (quoting *State v. McNail,* 767 S.W.2d 84, 86 (Mo.App. E.D.1989)).

Factors that appellate courts have considered when determining whether the trial court coerced the jury include the amount of time that the jury deliberates before the hammer instruction is read, the amount of time that elapses between the reading of the hammer instruction and the verdict, whether the trial judge knows numerically how the jury is split and the position of the majority, and whether the giving of the instruction conforms with the Notes on Use.

*Starks,* 820 S.W.2d at 529.

Defendant asserts, based on information received from an Allen Asch[3]—who allegedly spoke to Juror No. 6—the jury interpreted the hammer instruction to mean "the minority should listen to the majority." Thus, defendant contends the instruction suggested those jurors who believed defendant was not guilty should reconsider.

■ Defendant's argument rests on an affidavit, which he attached to his Motion for

3. The defendant does not identify Allen Asch and the record is silent as to his identity.

New Trial, but which was never stipulated to by opposing counsel. Regardless of whether the affidavit can properly be considered evidence,[4] the statement of Juror No. 6 cannot be used to impeach the verdict. "Missouri law has long held that a juror's testimony or affidavit may not be used to impeach the verdict as to misconduct inside or outside the jury room whether before or after the jury is discharged." *State v. Fleer*, 851 S.W.2d 582, 595 (Mo.App. E.D.1993).

The record indicates that the jury began deliberating at 6:08 p.m. and retired at 11:00 p.m. The next morning the jury resumed deliberations at 8:30 a.m. After eleven and one-half hours of deliberation, at 3:05 p.m., the trial court read the hammer instruction. The jury resumed deliberations and returned guilty verdicts on both counts, one hour and eighteen minutes later. The jury was polled individually affirming the guilty verdicts.

Defendant does not assert the trial judge was aware of how the jury was split, or the position of the majority. Nor does defendant assert—and there is no evidence—the instruction did not conform to the Notes on Use. Further, the time lapse of one hour and eighteen minutes between the hammer instruction and the guilty verdicts is not indicative of coercion. Deliberations of lesser amounts of time have been found not to be evidence of coercion. *See, e.g., State v. Parson*, 815 S.W.2d 106, 107–108 (Mo.App. E.D. 1991) (thirty-eight minutes); *State v. Harris*, 751 S.W.2d 131, 132 (Mo.App. E.D.1988) (twenty minutes).

Defendant's improper reliance on the juror's statement and his failure to present evidence to support his assertion that the trial court abused its discretion by giving the hammer instruction renders his argument unpersuasive. Point denied.

In his third point on appeal, defendant asserts the trial court erred and abused its discretion in sustaining the state's hearsay objection and precluding defendant from ask-

ing Tyrone Tipton, "What did Detective Berra tell you that [Defendant] said about you?" Defendant maintains this statement was not offered for the truth of the matter asserted but was offered to show the state of mind of Tipton—that he had a motive to lie in that he believed Defendant was accusing him of the crime.

On the issue of whether the trial court abused its discretion in sustaining the state's hearsay objection, we note "[t]he trial court has broad discretion over questions concerning the relevance and admissibility of evidence." *State v. Coats*, 835 S.W.2d 430, 433 (Mo.App. E.D.1992). Further, "[w]hen an objection is made to proffered evidence and that objection is sustained, the proponent must make an offer of proof in order to preserve the matter for appellate review." *Fleer*, 851 S.W.2d at 595. An offer of proof must demonstrate the relevancy of the testimony offered, must be specific, and must be definite. *Id.* Usually, a proper offer of proof entails questions to a witness on the stand. *Id.*

At trial, defendant blamed victim's death on Tipton. Tipton acknowledged on cross-examination that Detective Berra told him he was a suspect because "[Defendant] said that I was there." Defendant proceeded to ask Tipton, "What did Berra say to you?" The state objected on hearsay grounds and noted Berra was available to testify. The trial court sustained the objection and the following occurred:

MR. BRAYER [defense counsel]: It goes to his frame of mind, Judge.

THE COURT: You want to repeat the question, Mr. Brayer?

MR. BRAYER: I'm going to repeat the—what did Detective Berra tell you that Mike said about you?

MR. LARNER [assistant prosecutor]: Objection, Your Honor. Hearsay.

THE COURT: Sustained.

THE WITNESS: Actually I can't say in fact—

---

**4.** This Court declines to rule on the admissibility of the affidavit.

THE COURT: Mr.—

MR. LARNER: There has been an objection.

THE COURT: The objection has been sustained. Mr. Berra is standing right outside the door. I can see him from here.

MR. BRAYER: Did Officer Berra tell you that Mike said something?

MR. LARNER: Same objection. Wait a minute, Tyrone.

THE COURT: Sustain the objection.

MR. BRAYER: If I can't ask anymore questions, that's it.

THE COURT: Any more questions, Mr. Brayer?

MR. BRAYER: If I can't proceed with that line of questioning, I have nothing else.

 The defendant failed to make an offer of proof to establish how Tipton's statement would demonstrate his motive to lie. Further, defendant's brief is silent as to what defendant believes Tipton's statement would have been. Therefore, without the offer of proof, and with only defense counsel's statement "it goes to his frame of mind," defendant leaves nothing for this Court to review. Point denied.

Based on the foregoing, the judgment of the trial court is affirmed in all respects.

DOWD, P.J., and REINHARD, J., concur.