**STATE of Missouri, Respondent,**

v.

**Kenneth Dean EDWARDS, Appellant.**

### No. ED 104587

Missouri Court of Appeals,
Eastern District,
DIVISION FIVE.

Filed: October 24, 2017

Rehearing Denied December 19, 2017

FOR APPELLANT: Casey Allen Taylor, 1000 West Nifong, Bldg 7, Suite 100, Columbia, Missouri 65203.

FOR RESPONDENT: Joshua Hawley, Richard Anthony Starnes, 221 West High Street, P.O. Box 899, Jefferson City, Missouri 65102.

## OPINION

James M. Dowd, Chief Judge

Kenneth Dean Edwards appeals the judgment entered upon his conviction following a jury trial in the Circuit Court of Franklin County of three counts of first-degree statutory sodomy and one count of incest. Edwards was sentenced to a total of 34 years in prison. In three points on appeal, Edwards claims (1) the trial court erred because there was insufficient evidence to convict him on Count II of first-degree statutory sodomy; (2) the court abused its discretion by allowing an older sister of the victim, K.W., to testify about what Victim told her about Edwards's sexual abuse of Victim; and (3) the court abused its discretion by allowing the State to introduce evidence of his prior misdemeanor conviction of first-degree sexual misconduct. Finding no reversible error, we affirm.

**Factual and Procedural Background.**

We must review some of the disturbing facts of this case in order to dispose of Edwards's claims of error. Between summer 2004 and summer 2008—during which period Victim was between the ages of seven and eleven—Edwards in various ways sexually violated, abused, and preyed on Victim in Warrenton, Missouri at the home where Edwards, Victim, Victim's mother, and Victim's sisters lived. Edwards committed these acts when he was home alone with Victim, before Victim's mother arrived home from work.

One day during summer 2007, one of Victim's older sisters ("Victim's sister") came home early from her job and abruptly opened the front door to the home to find Edwards in what appeared to be the act of abusing Victim. Edwards quickly shut the door in her face. Nearly seven years later, in January 2014, Victim's sister asked Victim to explain what was happening that day. Victim told her sister that Edwards was abusing her, and provided her with an account of what happened that day which is discussed in further detail below.

On April 14, 2014, when Victim was 16 years old, she and her sister reported Edwards's abuse of Victim to the police. Subsequently, Victim was interviewed at the Child Advocacy Center ("CAC"), an anti-child-abuse non-profit. Some of the information she provided during her CAC interview and in a deposition differed from her testimony at trial. At trial, Victim recounted the acts of abuse referenced above, among others, and described in detail two incidents where Edwards forced her to perform oral sex on him, one of which she had discussed in depth during her CAC interview. Victim's sister also testified at trial, relating Victim's January 2014 statements to her about the abuse. On the basis of this evidence, together with other evidence, Edwards was convicted of all four charged offenses. This appeal

follows. Further details are provided below.

## Point I: The Sufficiency of the Evidence on Count II.

In his first point on appeal, Edwards contends that there was insufficient evidence to convict him on Count II's charge of first-degree statutory sodomy. We disagree.

■ We review a challenge to the sufficiency of the evidence only to determine whether the State introduced sufficient evidence at trial for a reasonable juror to have found that each element of the offense was established beyond a reasonable doubt. *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010). We accept as true all evidence and reasonable inferences favorable to the verdict, disregarding contrary evidence and inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). We give great deference to the trier of fact and do not act as a "super juror" with veto powers. *State v. Feldt*, 512 S.W.3d 135, 156 (Mo. App. E.D. 2017). But where the act constituting the crime is specified in the charge, the State is held to proof of that act, and the defendant may be convicted only on the basis of that act. *State v. Armstrong*, 863 S.W.2d 374, 377 (Mo. App. E.D. 1993) (citing *State v. Edsall*, 781 S.W.2d 561, 564 (Mo. App. S.D. 1989)). Additionally, we presume that the jury followed the instructions. *State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999).

■ Here, in the second amended information and according to the trial court's instructions, Count II charged that between July 1, 2004 and June 30, 2008, Edwards had Victim perform oral sex on him and told her that it was a game. During jury deliberations, the jury asked the trial court whether, to convict on Count II, it had to believe that the "game" happened, or just that Edwards committed sexually deviant acts. The court told the jury to be guided by the instructions.

Based on these facts, Edwards claims that the jury convicted him on Count II without sufficient evidence. Edwards compares this case to *State v. Jackson*, 896 S.W.2d 77, 82-83 (Mo. App. W.D. 1995), in which the Western District concluded that because particular charges against the defendant specified that the offenses occurred in the bathroom of a residence, the defendant could not be convicted of those offenses based on evidence that they were committed in the *bedroom* of the residence. In that case, there was therefore no evidence in the record that the defendant committed the specific act charged.

We find *Jackson* distinguishable. *Jackson* marks an exception to the general rule found in such cases as *State v. Nelson*, 334 S.W.3d 189, 197 (Mo. App. W.D. 2011), that where the act proven falls within the statutory definition of the offense and the charging document informs the accused of that charge, inclusion of the details of the commission of that offense is mere surplusage that the State is not required to prove. In *Jackson*, 896 S.W.2d at 83, the court observed that while generally it is not necessary to prove the location where the offense occurred, where the location is "significant for purposes of identifying and distinguishing between the numerous incidents of sodomy," proof of that charged detail may be required. Specifically, proof of a charged detail that would otherwise be considered mere surplusage in the charging document must be presented if, without proof of the detail, the State would present evidence not of the charged offense, but only of what "appears to be a separate offense." *Id.* But that did not happen here.

In this case, the State presented evidence of the three charged first-degree statutory sodomy offenses, but not of any separate offenses that might reasonably need to be distinguished from those charged. The evidence showed Edwards forced Victim to participate in the single charged incident of anal sex, and two incidents of oral sex performed by Victim on Edwards. Victim testified she could remember "[m]aybe two" occurrences of the latter sort of incident. The first, she said, involved Edwards telling her the oral sex was a "fever reducer" for him. When asked about the second incident, Victim first stated it was "kind of blurry," and that she could not recall anything specific Edwards said during it. Subsequently, however, Victim testified Edwards suggested they "play a game" called "hide the sausage," and that this particular fact figured in her account to an interviewer with the CAC of one of the two incidents she could recall in detail where she performed oral sex on him.

Edwards fails to point to a separate offense the jury might have concluded he committed based on this evidence. Instead, he notes the possibility the jury might have determined that he suggested playing the "game" with Victim but did not commit first-degree statutory sodomy at the time. But here the jury convicted him of all three counts of that offense, and substantial evidence supports that Edwards committed the criminal conduct charged in Count II, even if he did not reference any "game" in doing so. Therefore, the problem in *Jackson*—whether to uphold the defendant's convictions of particular crimes where the State presented evidence of their commission only in incidents *clearly separate* from those charged—does not exist here. Edwards does not even claim that he suggested playing the "game" at the time he committed a *different* first-

degree statutory sodomy than that charged in Count II.

Thus, when the jury asked whether to convict Edwards of first-degree statutory sodomy on Count II it had to believe that the "game" happened or just that "sexual[ly] deviant acts happened," nothing more than surplusage in the charging document was at issue. The State had not done what it did in *Jackson*: presented evidence of a separate offense from that charged, and failed to present evidence of the charged offense, rendering the defendant's conviction unsupported by sufficient evidence. So we find that the trial court did not err by denying Edwards's motion for acquittal, and Point I is denied.

**Point II: The Trial Court's Admission of Victim's Sister's Testimony Relating Victim's Statements about Edwards's Abuse.**

In his second point on appeal, Edwards asserts that the trial court abused its discretion by allowing Victim's sister to testify about what Victim told her about Edwards's sexual abuse. We disagree.

The trial court is vested with broad discretion in determining the admissibility of evidence, and we will not disturb its ruling absent a clear abuse of that discretion. *State v. Johnson*, 207 S.W.3d 24, 42 (Mo. banc 2006). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court, and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *State v. Roggenbuck*, 387 S.W.3d 376, 382 (Mo. banc 2012). We review the trial court's decision for prejudice, not mere error, and reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Forrest*, 183 S.W.3d 218, 223–24 (Mo. banc 2006).

■ Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *State v. Stokes*, 492 S.W.3d 622, 625 (Mo. App. E.D. 2016) (citing *State v. Kemp*, 212 S.W.3d 135, 146 (Mo. banc 2007)). Hearsay statements are generally inadmissible. *Id.* However, hearsay in the form of prior consistent statements is admissible for the purpose of rehabilitating a witness whose credibility has been attacked by an express or implied claim of recent fabrication of trial testimony, *State v. Christeson*, 50 S.W.3d 251, 267 (Mo. banc 2001) (citing *State v. Ramsey*, 864 S.W.2d 320, 329 (Mo. banc 1993)). Any evidence tending to permit an inference that the testimony of a witness is recently fabricated opens the door for the introduction of the witness's consistent statements made prior to the suggested fabrication. *State v. Davis*, 186 S.W.3d 367, 375 (Mo. App. W.D. 2005). But only such statements made before the impeaching statement or the origin of a motive to lie are relevant to rebut a claim of contrivance. *Ramsey*, 864 S.W.2d at 329.

■ Here, Victim's sister testified that Victim told her, several years after the abuse occurred, that Edwards had sexually abused her; that the last day it happened was the day Victim's sister walked in on them; that Edwards had anally sodomized her, telling her it was punishment for not keeping her room clean; that he had put his fingers in her vagina; that he had performed oral sex on Victim; and that Victim had performed oral sex on him. There is no dispute that these were prior consistent statements. Each statement matched a similar one in Victim's trial testimony.

Edwards argues that this testimony was inadmissible hearsay because it exceeded the scope of any impeachment of Victim, and Victim's statements were not made before the origin of a motive to lie. We disagree.

First, Edwards does not assert when Victim began to have a motive to fabricate her statements about her sexual abuse. And Victim's statements that Victim's sister repeated in her testimony were made several months before Victim made the statements during her interview with the CAC and during her deposition with which Edwards sought to impeach her at trial. So we must reject Edwards's assertion that when she recounted her abuse to her sister, Victim had a motive to lie.

Likewise, we reject Edwards's claim that Victim's sister's testimony about what Victim said exceeded the scope of Edwards's impeachment of Victim. The record shows that in a calculated attempt to demonstrate that Victim had fabricated her account of her abuse, defense counsel on cross-examination of Victim confronted her with certain inconsistent statements she made during her interview with the CAC and at her deposition. Defense counsel sought to impeach Victim with her statement in her CAC interview that Edwards did not touch her genitals, since it contradicted her trial testimony; her failure to recall in the CAC interview that on the day Victim's sister abruptly opened the door to the home while Edwards was abusing her, Edwards had performed oral sex on her and she also had done so on him, which facts she remembered at trial; the fact that her testimony regarding at what age the abuse began differed in her trial testimony from what she said during the CAC interview; and her deposition statement that just as Victim's sister was about to enter on that day, Victim thought Edwards was going to anally sodomize her, which also contradicted her trial testimony.

Defense counsel also effected the following exchange directed at undermining Vic-

tim's credibility and suggesting contrivance:

> COUNSEL: And you said that you're in college, now in Chicago; is that what you said?
>
> VICTIM: Yes.
>
> COUNSEL: And your major's actually drama; is that right?
>
> VICTIM: Theater education.
>
> COUNSEL: Okay. And you said before that you're pretty good at pretending; is that right?
>
> VICTIM: Yes.

The record is clear and this questioning eliminates any doubt that before Victim's sister related Victim's prior consistent statements, Edwards had attacked Victim's credibility with the implication that she had fabricated her testimony.

 We turn finally to Edwards's claim that the prior consistent statements constituted improper bolstering. Improper bolstering occurs when the hearsay statement of a witness is offered solely to duplicate or corroborate trial testimony. If a prior consistent statement is relevant for purposes other than corroboration and duplication of trial testimony, it is not improper bolstering. *Ramsey*, 864 S.W.2d at 329. Admitting Victim's sister's testimony about what Victim told her was not improper bolstering because it was offered to rehabilitate Victim after the State attacked her credibility by presenting evidence of recent fabrication. We find no abuse of discretion, and Point II is denied.

## Point III: The Trial Court's Admission of Evidence of Edwards's Prior Misdemeanor Conviction of First-Degree Sexual Misconduct.

In his third and final point on appeal, Edwards claims that the trial court abused its discretion by allowing the State to introduce evidence of his prior misdemeanor conviction of first-degree sexual misconduct. We disagree. We find that the 2014 enactment of Article I, Section 18(c) of the Missouri Constitution effectively renders unreviewable the court's decision to admit this propensity evidence.[1]

Prior to the amendment of Section 18(c), the Missouri General Assembly attempted several times to enact legislation on the issue of propensity evidence in prosecutions for crimes of a sexual nature. *State v. Thigpen*, 2017 WL 3388977, *4 (Mo. App. E.D. Aug. 8, 2017). The Missouri Supreme Court in 2007 found the last of the General Assembly's statutory attempts was unconstitutional. *See State v. Ellison*, 239 S.W.3d 603, 607-08 (Mo. banc 2007) (striking down § 566.025). The General Assembly subsequently approved a joint resolution, which proposed to Missouri voters a constitutional amendment allowing for the admission of propensity evidence in particular criminal cases. *Thigpen*, 2017 WL 3388977, at *5. Section 18(c), effective as of December 2014 and set forth below, now controls the question whether evidence like that at issue here was erroneously admitted:

> Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence

---

1. No court has yet considered whether Section 18(c) offends the United States Constitution.

of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

This Court has already interpreted and applied this language with great depth of analysis. *See, e.g., Thigpen,* 2017 WL 3388977, at *4-*6; *State v. Rucker,* 512 S.W.3d 63, 68-70 (Mo. App. E.D. 2017). We will not belabor the point here but will instead make a few of our own observations while applying the case-law interpretations already set forth.

In *Rucker,* 512 S.W.3d at 69, and *Thigpen,* 2017 WL 3388977, at *8, this Court held that the trial court is permitted to *admit* propensity evidence falling under Article I, Section 18(c) even if its probative value is *substantially outweighed* by the prejudice it inflicts. This Court reasoned that the General Assembly's use of the word "may" in Section 18(c) indicates that the trial court has discretion to exclude the evidence in such circumstances, but it is not obligated to do so. *Rucker,* 512 S.W.3d at 69. This Court cited the general rule that in statutes the word "may" is permissive only, and the word "shall" is mandatory. *Id.* (citing *Wolf v. Midwest Nephrology Consultants, PC.,* 487 S.W.3d 78, 83 (Mo. App. W.D. 2016)).

We apply this rationale here: Essentially, if the trial court admits propensity evidence under Section 18(c), the constitutional provision appears to imply that the court simply cannot be convicted of reversible error. Therefore, because the trial court in this case took an effectively unreviewable action in admitting evidence of Edwards's prior conviction of first-degree sexual misconduct, we must reject any challenge to the admission of that evidence. We see no reason to assess the logical or legal relevance of the propensity evidence here admitted because the Missouri Constitution and this Court's prece-

dents now direct that the trial court may set such matters aside in determining whether to admit evidence of this sort. In the absence of any evidence on this record that the trial court's decision was for some other reason arbitrary and unreasonable, we must not find the court abused its discretion. Point III is denied.

### Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Lawrence E. Mooney, J., and Sherri B. Sullivan, J., concur.