

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD35795 |
| | ) | Filed: March 18, 2020 |
| MICHAEL D. BURGE, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Jennifer R. Growcock, Judge

**<u>AFFIRMED</u>**

Michael D. Burge ("Burge") appeals his convictions, following a jury trial, of one count of statutory sodomy in the first degree, and one count of child molestation in the first degree. Burge challenges his convictions in three points on appeal. Finding no merit to Burge's points, we reject the same and affirm the judgment of the trial court.

**Facts and Procedural Background**

We recite the evidence and the reasonable available inferences therefrom in the light most favorable to the verdict. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). We recite other information as necessary for context.

In 2013, Burge sexually assaulted K.A. and C.A. At the time of the assaults, K.A. was 10 years old and C.A. was 9 years old.

In December 2014, the girls disclosed the abuse to their mother, and a police report was filed. The girls also underwent interviews at the Child Advocacy Center ("CAC"), and Burge was subsequently apprehended.

Burge was charged by amended information (as a predatory sexual offender)[1] with the unclassified felony of statutory sodomy in the first degree as to C.A.[2] (Count I), and the class B felony of child molestation in the first degree as to K.A. (Count II).[3]

Prior to trial, the State filed a motion to admit propensity evidence, pursuant to section 566.025 and the MO CONST. art. I, § 18(c). The motion asserted that Burge had also committed first-degree child molestation against B.P. (another child victim), and that evidence of such was relevant to show that Burge had a propensity to commit crimes of a sexual nature involving victims under the age of 18. After hearing argument, the trial court took the matter under advisement.

A jury trial commenced on September 17, 2018. The State called B.P. to testify as part of its case-in-chief. Burge objected to B.P.'s testimony regarding her previous encounter with Burge, arguing that the prejudicial effect substantially outweighed the probative value, and that it was not

---

[1] *See* section 558.018, RSMo Cum.Supp. 2013.

[2] *See* section 566.062, RSMo Cum.Supp. 2006. All other references to statutes are to RSMo Cum.Supp. 2016, unless otherwise indicated.

[3] *See* section 566.067.

propensity evidence. The trial court overruled Burge's objection and granted a continuing objection.

After the prosecutor finished his direct examination, defense counsel (before beginning cross-examination of B.P.) made an offer of proof outside the presence of the jury, wherein defense counsel adduced testimony from B.P.'s mother ("Mother") regarding an allegedly false accusation of sexual assault B.P. had made regarding another man in the past. After hearing the evidence, the trial court denied defense counsel's request to present the evidence before the jury.

Burge presented evidence, and testified in his own defense.

The jury found Burge guilty of statutory sodomy in the first degree in Count I, and child molestation in the first degree in Count II. Burge waived jury sentencing. The trial court found Burge to be a predatory sexual offender, and sentenced Burge to life with the possibility of parole after serving a minimum of 15 years on Count I, and life with the possibility of parole after serving a minimum of 10 years on Count II, with the sentences to run consecutively. This appeal followed.

In three points on appeal, Burge asserts:

## I.

**The trial court abused its discretion in allowing the state to introduce evidence of Mr. Burge's alleged sexual misconduct against B.P., over his objection, because this propensity evidence was substantially more prejudicial than probative, violating his rights to due process, a fair trial, and to be tried for the offense with which he was charged, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10, 17, 18(a), and 18(c) of the Missouri Constitution, in that B.P.'s testimony had little probative value, the jury was allowed to speculate that Mr. Burge was not punished for this alleged crime, the state did not present the evidence in a dispassionate way, and the state emphasized this propensity evidence throughout the entire trial.**

## II.

**The trial court abused its discretion in excluding extrinsic evidence that B.P. falsely accused her father of sexually assaulting her and later recanted her accusations, in violation of Mr. Burge's rights to present a defense, to due process of law, and to a fair trial, as guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution and Article I, Sections 10, 17, and 18(a) of the Missouri Constitution, in that this excluded evidence was relevant to challenge B.P.'s veracity and was relevant because it would have supported Mr. Burge's defense that K.A, C.A. and B.P had collaborated to fabricate the allegations of sexual misconduct against Mr. Burge.**

## III.

**The trial court abused its discretion in permitting the state to admit the reports from K.A.'s and C.A.'s child advocacy center interviews in violation of Mr. Burge's rights to due process of law and a fair trial guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that this evidence was repetitive, cumulative, bolstering and prejudicial.**

### Standard of Review

"The trial court has broad discretion to exclude or admit evidence at trial. This Court will reverse only upon clear abuse of discretion." *State v. Shockley*, 410 S.W.3d 179, 195 (Mo. banc 2013). "We further note that we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Bumbery*, 492 S.W.3d 656, 665 (Mo.App. S.D. 2016) (internal quotation and citation omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

The general rule in Missouri is that evidence must be both logically and legally relevant in order to be admissible. Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case. The determination of legal relevance—the balancing of the probative value of the proffered evidence against its prejudicial effect on the jury—rests within the sound discretion of the trial court.

4

*State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002) (internal quotations and citations omitted) (internal footnotes omitted).

## Analysis

### Point I: Alleged Propensity Evidence

In his first point, Burge argues that the trial court abused its discretion in overruling his objection to B.P.'s testimony that Burge subjected her to (uncharged) sexual misconduct, in that the testimony "had little probative value, the jury was allowed to speculate that [] Burge was not punished for this alleged crime, the state did not present the evidence in a dispassionate way, and the state emphasized this propensity evidence throughout the entire trial."[4]

As our Supreme Court recently observed, "it is safe to say a general prohibition against the use of propensity evidence in criminal cases has been firmly engrained in American jurisprudence throughout much of the nation's history." *State v. Williams*, 548 S.W.3d 275, 281 (Mo. banc 2018), *cert. denied*, 139 S.Ct. 606, 202 L.Ed.2d 439 (2018). Nevertheless, "[t]he practice of admitting evidence of the defendant's prior sexual misconduct for purposes of proving the

---

[4] The argument attending Burge's first point begins with the paragraph:

> Generally, proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he or she is on trial. [*State v.*] *Prince*, 534 S.W.3d [813,] 818 [(Mo. banc 2017)]. However, evidence may be admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial. *Id.* (citation omitted). Evidence of uncharged crimes that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible to present a complete or coherent picture of the events that transpired. Here, the state made no argument—nor can any argument be made—that the evidence from B.P. was admissible under any of the above exceptions.

Burge's argument does not indicate—and we do not discern—why the success of his appeal would depend on refuting arguments that (Burge asserts) were not made, cannot be made, and are not (seemingly) contemplated by his point relied on. The State's brief does not chase this quarry. We do not discern such matters to be compellingly tied to Burge's primary arguments in his first point, and find them unnecessary to our disposition—as such, having acknowledged the presence of this argument, we decline substantive treatment thereon.

defendant's propensity to commit the sex offense with which he was charged has long been a feature of American law[,]" *id.* at 282, and is reflected in article I, section 18(c) of our Missouri Constitution:

> Notwithstanding the provisions of sections 17[5] and 18(a)[6] of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[7]

Such principle was—at the time of Burge's trial and sentencing—also reflected by the sentencing directives of section 558.018, which in relevant part mandated that the trial court "sentence a person to an extended term of imprisonment if it finds the defendant is a persistent sexual offender and has been found guilty of attempting to commit or committing" designated sexual offenses. § 558.018.1-.2.[8]

---

[5] MO CONST. art. I, § 17 states:
> That no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information, which shall be concurrent remedies, but this shall not be applied to cases arising in the land or naval forces or in the militia when in actual service in time of war or public danger, nor to prevent arrests and preliminary examination in any criminal case.

[6] MO CONST. art. I, § 18(a) states:
> That in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy public trial by an impartial jury of the county.

[7] "[A]rticle I, section 18(c) applies only prospectively [in that] it applies only to *trials* on or after its effective date." *State ex rel. Tipler v. Gardner*, 506 S.W.3d 922, 925 (Mo. banc 2017) (emphasis in original). We observe that Burge does not challenge his convictions on this basis in the instant appeal, and the record reflects that article I, section 18(c) was effective at the time of the trial from which Burge's convictions derive.

[8] While section 558.018 is (perhaps) not as explicit as MO CONST art. I, § 18, no great leap of logic is required in observing that, at least in part, a significant rationale underlying section 558.018 is the incapacitation of those persons statutorily designated as posing a societally unacceptable propensity for specific types of sex offenses.

The chronology of these matters is informative:

> Prior to the amendment of Section 18(c), the Missouri General Assembly attempted several times to enact legislation on the issue of propensity evidence in prosecutions for crimes of a sexual nature. *State v. Thigpen*, 2017 WL 3388977, \*4 (Mo. App. E.D. Aug. 8, 2017). The Missouri Supreme Court in 2007 found the last of the General Assembly's statutory attempts was unconstitutional. *See State v. Ellison*, 239 S.W.3d 603, 607-08 (Mo. banc 2007) (striking down § 566.025). The General Assembly subsequently approved a joint resolution, which proposed to Missouri voters a constitutional amendment allowing for the admission of propensity evidence in particular criminal cases. *Thigpen*, 2017 WL 3388977, at \*5. Section 18(c), effective as of December 2014, . . . now controls the question whether evidence like that at issue here was erroneously admitted.

*State v. Edwards*, 537 S.W.3d 848, 854–55 (Mo.App. E.D. 2017).[9]

After 18(c) was adopted, our Supreme Court observed in **Williams** that: "[b]efore propensity evidence can be said to have any probative value, it must be sufficient for the jury to conclude the defendant actually committed the prior criminal act." 548 S.W.3d at 288. As the **Williams** court explained, "[b]ut that is not enough. To be probative (i.e., logically relevant), the evidence of the prior criminal act must tend to show the defendant actually had a propensity to commit the charged crime at the time it is alleged to have occurred." *Id.* at 289. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (internal quotation and citation omitted). "This is the source of the circuit court's concern with the similarity between the prior criminal act and the charged crime and with the amount of time between the two. Indeed, the two considerations are inversely related." *Id.*[10] Finally, "in

---

[9] The **Edwards** holding (*i.e.*, "[e]ssentially, if the trial court admits propensity evidence under Section 18(c), the constitutional provision appears to imply that the court simply cannot be convicted of reversible error[]") was abrogated by our Supreme Court's opinion in **Williams**. 537 S.W.3d at 855. We utilize the excerpted portion of the **Edwards** opinion **solely** for the utility of its ordered narrative—having independently confirmed its recitation to be accurate on this count, we see no benefit in recasting what has already been said clearly and correctly.

[10] "For example, an inference of propensity might be proper notwithstanding a significant time lapse between the prior crime and the charged crime if the two crimes are highly similar." **Williams**, 548 S.W.3d at 289. "On the other hand, an inference of propensity might not be proper if the prior crime and the charged crime are only somewhat similar unless the two occurred over a short span of time." *Id.*

7

determining the probable value of a particular item of propensity evidence, courts have looked to the prosecutor's need for that evidence to prove its case." **Id.** Notably, "prior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." **Williams**, 548 S.W.3d at 289 (internal quotation and citation omitted) (emphasis in original).

We recite (to the extent our discernment affords) and respectively address the various strands of Burge's arguments in this vein. First, Burge claims there was little or no probative value in B.P.'s testimony because it was contradicted by other witnesses at trial, and because B.P.'s description of Burge as "skinny, scrawny, and a 'crackhead' was contradicted by [] Burge's actual appearance." We are unpersuaded. Burge's jury trial took multiple days, nearly a score of witnesses testified, and the trial transcript is approximately five hundred pages. B.P. was not required to anticipate or testify consistently with other witnesses as to Burge's current (or past) appearance for her testimony to have probative value.[11] *See* **State v. Alexander**, 505 S.W.3d 384, 395 (Mo.App. E.D. 2016) ("[T]he testimony of only one witness may be sufficient to sustain a conviction, even if the testimony is inconsistent.").

Burge next argues that "the propensity evidence offered by B.P. was uncharged and did not result in a conviction[,]" such that "the jury was free to speculate [] Burge had escaped punishment for his molestation of [B.P.]" Burge's attempts to rely on **Williams**, 548 S.W.3d at 279, 290-91 (wherein our Supreme Court rejected an appeal to a conviction where challenged

---

[11] Burge did not object to this testimony at trial (aside from his generalized continuing objection to B.P.'s testimony as a whole), and he does not allege on appeal that misidentification (*i.e.*, that the crimes were perpetrated by some third party) was a legitimate issue for consideration at trial or on appeal. *See* **State v. Schaal**, 806 S.W.2d 659, 669 (Mo. banc 1991) ("Evidence that another person had an opportunity or motive for committing the crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime."). The absence of such evidentiary allegation (or injection) is not decisive—the State was required to identify the perpetrator of the crimes charged by presenting evidence to the jury, and B.P.'s testimony was legally relevant for the purpose of establishing *that* person's propensity to do so.

evidence was a stipulation read to the jury) and *State v. Lutes*, 557 S.W.3d 384, 388 (Mo.App. W.D. 2018) (wherein our Western District rejected an appellate challenge to a conviction where an officer read certified copies of prior convictions to the jury). Burge complains that unlike *Williams* and *Lutes*, in Burge's trial "the state had B.P. testify in detail about the alleged abuse[,]" B.P.'s testimony was emotional, and the trial court had to repeatedly ask B.P. to speak louder.

This line of argument amounts—at best—to a distinction without a difference. Our Supreme Court was unambiguous and emphatic on this point: the particular and specific circumstances in *Williams* dictated the particular and specific ***factors*** for consideration, and the weight to be applied to each factor; courts are to make such determinations in accord with *William*'s instruction, not the particularized factors appropriate to *that* specific case.[12] ***Factors are not elements***,[13] and Burge's argument is properly understood as an ineffectual (and unavailing) attempt at shoehorning the former into the latter. The particular and specific circumstances in each case dictate the factors to be considered, as Burge's brief (elsewhere) candidly acknowledges.

Finally, Burge attempts to argue that "the way the state used [the challenged] evidence exacerbated its prejudicial effect." Again, he attempts to find footing by distinguishing the particular and individual circumstances in his trial from *Williams* and *Lutes*, where (he suggests): "the State did not emphasize the prior acts, and the evidence amounted to less than a minute or

---

[12] Indeed, *Williams* directs that: (1) abuse of discretion—not *de novo* review—is the operative standard on appeal; (2) the trial court need not make an express finding ("in so many words") as to legal relevance under article I, section 18(c); (3) the "relevant factors" considered by the circuit court in *Williams*, and the weight afforded them therein—while "instructive"—are ***not*** to be interpreted as necessarily applicable, exclusively or inclusively, in the context of any particular case; and (4) the "relevant factors" for consideration by the trial court (and the reviewing court) "will vary from case to case, as will the weight to be afforded any one factor in particular." 548 S.W.3d at 288.

[13] *See **Vacca v. Missouri Department of Labor and Industrial Relations**, 575 S.W.3d 223, 233 (Mo. banc 2019) ("[F]actors are merely considerations, not elements[.]").

two of the testimony."[14]  Whereas here, Burge suggests, the prosecutor told the jury during oral argument that it would hear from B.P., K.A. and C.A. at trial, but "[t]he state . . . did not tell the jury [] Burge was not on trial and had not been charged for any offenses against B.P.[,]"  B.P. gave emotional testimony, the State argued in closing argument that B.P.'s testimony was credible, and "[a]lthough the state called B.P.'s testimony 'propensity' evidence, the state did not advise the jury during closing argument that it could only consider B.P.'s testimony to corroborate the testimony of K.A. and C.A. or to consider whether it believed [] Burge had a propensity to commit the charged offenses."

This argument is unavailing.  B.P.'s propensity evidence had significant probative value.  Burge asked B.P. (who was 7 or 8 years old at the time) to sit on his lap, where he then proceeded to rub her genitals over her clothing.  The charges in the instant matter related to Burge's conduct with respect to K.A. and C.A. (both less than 12 years old at the time):  Burge asked each to sit on his lap, and then rubbed their genitals with his hand.  Boiled down, Burge's argument is that B.P.'s propensity evidence was effective, and that the prosecutor utilized the admissible evidence at his disposal to present the most effective case he could.

Generally, (though depending on the facts and circumstances of each case) evidence is not inadmissible for being "too probative"—a defendant is not entitled to have adverse evidence screened to "sanitize the trial," and though "startling or disturbing," evidence may nevertheless be "admissible to assist the jury to understand the facts or testimony of witnesses, the timetable of events, or to establish any element of the State's case."  *State v. Isa*, 850 S.W.2d 876, 893 (Mo. banc 1993).  Certainly, Burge's argument correctly recites that the prosecutor made effective use

---

[14] It is unclear how appellate counsel arrived at these time estimates, and we are prohibited from engaging in speculation or independent research on his behalf.  Moreover, it is not self-evident (even if such times were accurate) why or how such information would inform our disposition (or the trial court's underlying ruling) in *this* case.  The trial court's discretion rightly guides this issue.

of probative testimony—however, Burge does not demonstrate that the trial court abused its discretion in finding that the probative value of the B.P. propensity evidence was not "substantially outweighed" by "the nature and extent of the danger of unfair prejudice[.]" *See Williams*, 548 S.W.3d at 288. Burge's Point I is denied.

### Point II: Alleged "Extrinsic Evidence" of False Accusation by B.P. Against Burge

In his second point, Burge argues that the trial court abused its discretion in excluding his alleged evidence that B.P. had previously "falsely accused her farther of sexually assaulting her and later recanted her accusations, . . . in that this excluded evidence was relevant to challenge B.P.'s veracity and was relevant because it would have supported [] Burge's defense that K.A., C.A., and B.P. had collaborated to fabricate the allegations of sexual misconduct against [] Burge."

> A defendant in a sexual assault or rape case may be entitled to present evidence that the prosecuting witness made prior false allegations of sexual misconduct on the grounds that such evidence is probative of that witness's credibility and veracity. However, for extrinsic evidence of a victim's false allegations to be admissible, the defendant must first establish by a preponderance of the evidence that the witness previously made knowingly false allegations. Additionally, the defendant must show that, due to the nature of the false statements and the circumstances under which they were made, that evidence is relevant to the witness's character for truth or veracity.

*State v. Thompson*, 341 S.W.3d 723, 732 (Mo.App. E.D. 2011) (internal quotation and citation omitted).

B.P. testified as a witness for the State during its case-in-chief. After the prosecutor finished direct examination of B.P., defense counsel made an offer of proof outside the presence of the jury—specifically, defense counsel sought to adduce the testimony of Mother to the effect that B.P. had previously joined two other girls in falsely accusing another man of abuse.

11

Mother's testimony in the offer of proof reflected (in relevant part) as follows: (1) B.P. did not "ever later on indicate that [the inappropriate touching allegation] wasn't true[]";[15] (2) as to "what [B.P.] disclosed[,]" Mother indicated, "I honestly don't remember. It was so long ago[]"; (3) B.P. "actually never disclosed anything to [Mother] that happened[,]" and Mother "just heard about it[]" from another familial relation; (4) the familial relation told Mother that her two daughters told her that an identified person (not Burge) had "inappropriately touched them and that [B.P.] had mentioned [it] also[]"; (5) the familial relation did not indicate what "inappropriately touched meant[]"; (6) Mother never "question[ed] [B.P.] about [the allegation]"; and (7) Mother had no information that the alleged incident did not happen, in that the familial relation "ended up moving away . . . and then we just let it be."

The record reflects that the trial court carefully examined this issue in its oral ruling at the conclusion of the defense's offer of proof:

> All right. I've looked at the cases on this issue pretty thoroughly. I think the parties would agree that parties may attack credibility of witnesses by demonstrating witnesses have bad character for telling the truth and veracity. Extrinsic evidence may come in if it's related to the central issue in this case, but the primary obligation of the person who wants to offer this here, the defense, has to show that it's legally relevant, and I must balance the probative value against the prejudice that would result from admitting this extrinsic evidence, and I must make the preliminary determination outside the presence of the jury, as we just did, on one, whether or not the victim made a false allegation; two, whether – I'm sorry, whether the victim made another allegation; whether or not that allegation was false; and that the victim knew the allegation was false. I don't think in this circumstance that I have enough information, based on the testimony that's been given by the witness in this case, [B.P.], or [Mother]. I think it's hearsay upon hearsay on what [Mother] . . . just testified to, and [B.P.] didn't admit anything in her questioning from the defense that she ever made any statement. [Mother] is the only other witness that has been provided to this Court to contradict what the testimony of [B.P.] was prior to her mother . . . testifying. [Mother] testified that she only heard of the prior allegation through a [familial relation], she never asked [B.P.] . . . anything about that allegation, she doesn't recall, other than her testimony at the deposition, that

---

[15] Defense counsel impeached Mother with her deposition testimony wherein she answered, "Yeah" to a question calling for the same information. In response to the impeachment, Mother agreed that such was her testimony at the deposition, and indicated that she had testified truthfully at the deposition.

12

[B.P.] told somebody that it wasn't true. I don't have enough information from them here today on that that [sic] statement was made[.] I think it's hearsay. I'm not sure who [B.P.] made that statement to that it wasn't true, so I don't think I can find—I know my standard is preponderance of the evidence, but I can't find here legal relevance, so I'm going to prohibit the prior false-allegation testimony.

Burge fails to demonstrate how or why the trial court abused its discretion in so ruling. The record reflects the trial court thoughtfully and carefully considered the evidence. Point II is accordingly denied.

### Point III: Admission of CAC Interviews of K.A. and C.A.

Burge's third point argues that "[t]he trial court abused its discretion in permitting the state to admit [] reports from K.A.'s and C.A.'s child advocacy center interviews"—respectively, Exhibits 2 and 4—because "this evidence was repetitive, cumulative, bolstering and prejudicial."

"Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." *Bumbery*, 492 S.W.3d at 665 (internal quotation and citation omitted). "If a prior consistent statement is relevant for purposes other than corroboration and duplication of trial testimony, it is not improper bolstering." *Edwards*, 537 S.W.3d at 854.

As the State points out in its brief (and as the record confirms), the challenged reports were certainly *consistent* with the testimony adduced from the CAC interviewer—however, the reports also reflected *additional* (not repetitive or cumulative) evidence not otherwise adduced from the CAC interviewer (or other witness) at trial, including anatomical drawings C.A. and K.A. each produced in order to demonstrate what Burge had done, and that C.A. and K.A. demonstrated relational concepts such as "inside vs. outside" and "over vs. under." As such, Exhibits 2 and 4

13

were "relevant for purposes other than corroboration and duplication of trial testimony," *id.* at 854, and therefore not improper bolstering.[16]

Burge fails to demonstrate that the trial court abused its discretion in admitting Exhibits 2 and 4. Point III is denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS

---

[16] As our Supreme Court recently indicated, "the state, having the burden of proving defendant's guilt beyond a reasonable doubt, should not be unduly limited in its quantum of proof." *State v. Wood*, 580 S.W.3d 566, 575 (Mo. banc 2019) (internal quotation and citation omitted).